# EXHIBIT C



U. S. Department of State

# GENERAL AUTHENTICATION CERTIFICATE

## VENUE

People's Republic of China
_____
Country

Guangdong Province
_____
State, Province, etc.

Guangzhou
_____
City

Consulate General of the
United States of America
_____
Name of Consular Post

I certify that the official named below, whose true signature and official seal are, respectively, subscribed and affixed to the annexed document, was, on this day, empowered to act in the official capacity designated in the annexed document, to which faith and credit are due.

Chen Hong
_____
Typed Name of Affiant


_____
Signature of Consular Officer

Mark Ananka
_____                    Vice Consul
Typed Name of Consular Officer

_____
Title of Consular Officer

0 6 JUL 2020
_____
Date *(mm-dd-yyyy)*

(SEAL)

DS-1982
05-2017

# Arbitral Award

Arbitral Award



China International Economic and Trade Arbitration Commission

# China International Economic and Trade Arbitration Commission

## Arbitral Award

Applicant: Xiamen ITG Group Corp., Ltd.

Address: 18/F, Guomao Building, Hubin South Road, Siming District, Xiamen City, Fujian Province, P.R. China

Arbitration Agent: Liu Xin and Jiang Chunjing on Behalf of Xiamen ITG Group Corp., Ltd.


Respondent: CRYSTAL VOGUE INC.

Address: 36 WILK RD EDISON, NJ 08837

       UNITED STATES OF AMERICA

Arbitration Agent: Wu Wenyi


Beijing

March 10, 2020

# Arbitral Award

[2020] Z.G.M.Z.J.C.Z. No. 0316

China International Economic and Trade Arbitration Commission (hereinafter referred to as the "Arbitration Commission") accepted the Case according to "CRYSTAL VOGUE INC. CONTRACT" numbered NLF20170221, "CRYSTAL VOGUE INC. CONTRACT" numbered NLF20170220 and "CRYSTAL VOGUE INC. CONTRACT" numbered NLF20170221 executed on February 10, 2017, "CRYSTAL VOGUE INC. CONTRACT" numbered NLF20170511 and "CRYSTAL VOGUE INC. CONTRACT" numbered NLF20170513 executed on May 10, 2017, by and between Xiamen ITG Group Corp., Ltd. (hereinafter referred to as the "Applicant"), and CRYSTAL VOGUE INC (hereinafter referred to as the "Respondent"), as well as the written arbitration application submitted by the Applicant to the Arbitration Commission on November 22, 2018. The number of the Case is G20181781.

The arbitration procedure in the Case shall be governed by *the Arbitration Rules of China International Economic and Trade Arbitration Commission* (hereinafter referred to as the "*Arbitration rules*") that took into effect on January 1, 2015.

On January 2, 2019, the Arbitration Court of the Arbitration Commission (hereinafter referred to as the "Arbitration Court") sent the Notice of Arbitration, *the Arbitration Rules* and *the List of Arbitrators* to both Parties hereof by express mail according to the address provided by the Applicant in the arbitration application. In the meanwhile, it sent the arbitration application submitted by the Applicant and the attached supporting evidence to the Respondent.

The Applicant chose Mr. Tang Gongyuan as the arbitrator for the Case. Since the Respondent failed to select or entrust the chairman of the Arbitration Commission to appoint an arbitrator within the prescribed time limit, the chairman of the Arbitration Commission appointed Ms. Liu Jing as the arbitrator for the Case according to *the Arbitration Rules*. Since both Parties hereof failed to jointly select or jointly entrust the Chairman of the Arbitration Commission to appoint the presiding arbitrator within the prescribed time limit, the Chairman of the Arbitration Commission appointed Ms. Zhou Xiaoyan as the presiding arbitrator of the Case according to *the Arbitration Rules*. After the signing of *the Declaration* for the Agreed Appointment, the aforesaid three arbitrators formed an Arbitration Tribunal on April 16, 2019 to jointly hear the Case.

The Arbitration Tribunal, in consultation with the Arbitration Court, decided to hold a hearing in Beijing on May 29, 2019. On April 16, 2019, the Arbitration Court sent the Notice of Formation of the Arbitral Tribunal for the Case and the attached *Declaration* for the Agreed Appointment executed by the arbitrators of the Case and the Notice of Court Session to both Parties hereof by express mail.

On May 29, 2019, the Arbitration Tribunal held a hearing on the Case in Beijing as scheduled. Both Parties hereof entrusted agents to attend the hearing. Before the hearing, the Applicant submitted to the Arbitration Tribunal the "List of Evidence" and the attached supporting evidence dated May 1, 2019. The Respondent submitted the form prepared unilaterally. The Arbitration Court transferred the aforesaid documents of both Parties hereof to each other in court. During the hearing, the Applicant stated the arbitration claim and the facts and reasons on which it was based. The Applicant presented the relevant original evidence and the Respondent replied to the claim. The Applicant presented the relevant original evidence and the Respondent questioned the evidence. Both Parties hereof debated the facts and legal issues and

1

answered the questions raised by the Arbitration Tribunal.

On July 1, 2019, the Applicant submitted the "Explanatory Letter", "Statement of Attorney", "List of Evidence" and the attached supporting evidence. Subsequently, the Arbitration Court forwarded the aforesaid materials submitted by the Applicant to the Respondent.

On February 19, 2020, the Applicant submitted an "Explanatory Letter for Changing the Arbitration Claim" and its attachments. On February 25, 2020, the Arbitration Court forwarded above-mentioned materials to the Respondent and informed both Parties hereof that the Arbitration Tribunal had decided to accept the arbitration claim changed in the Applicant's above-mentioned "Explanatory Letter for Changing the Arbitration Claim" and requested the Respondent to reply within the prescribed time limit. Within the aforesaid prescribed time limit, the Respondent failed to submit a written reply.

Based on the needs of the arbitration procedure in the Case, upon the application by the Arbitration Tribunal, the president of the Arbitration Court agreed and decided to extend the deadline for making the award on the Case to March 17, 2020.

All written notices and documents concerning the Case have been effectively served by the Arbitration Court on both Parties hereof in accordance with the Arbitration Rules.

The Case has now been concluded. The Arbitration Tribunal has made this award through the joint deliberation based on the existing written documents submitted by both Parties hereof and the facts found during the hearing.

The Case, the opinions of the Arbitration Tribunal and the results of award are concluded as follows:

## I.   Basic Information of the Case

(I)   The Applicant's arbitration claim and the facts and reasons on which it was based.

On February 10, 2017, the Applicant and the Respondent executed five copies of CRYSTAL VOGUE INCCONTRACT numbered NFL20170221 (a total of 2 copies, which are distinguished by NFL20170221-1 and NFL20170221-2), as well as five copies of CRYSTAL VOGUE INCCONTRACT numbered NFL20170220, NFL20170511 and NFL20170513, respectively. As provided for under the Contract, the Respondent shall purchase cloth from the Applicant, and the Applicant shall deliver the goods under the aforesaid Contract for litigation to the Respondent as scheduled in accordance with the Contract Agreement, but the Respondent refused to pay. The specific terms and performance of each contract are concluded as follows:

1.   Terms and Performance of the Contract Numbered NFL20170221-1

In accordance with the Contract, the total quantity of cloth purchased by the Respondent from the Applicant is 336,000KGS, with a total amount of USD 1,490,400. The place of delivery is CIF MEXICO and the payment method is OA 180days (payment within 180 days after the goods are shipped).

After the signing of the Contract, the Applicant consigned the goods under the Contract to the shipping company CCNI for transportation. On June 12, 2017, the Respondent applied to the shipping company CCNI for transportation. On June 12, 2017, the Respondent applied to the Applicant for the Telex Release Bill of Lading, and then issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Telex Release Bill of Lading will be made

2

within 180 days after the goods are shipped. On June 11, 2017, the shipping company CCNI issued an Telex Release Bill of Lading to the Applicant showing that the goods had been loaded on board. On June 23, 2017, the Applicant sent the Telex Release Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on July 2, 2017, and the Respondent picked up the goods by the Telex Release Bill of Lading.

In accordance with the Contract, the Respondent shall pay off above-mentioned amount under the Contract prior to December 8, 2017. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The total principal amount of the loan under the aforesaid contract is USD 100,050.72.

2.   Terms and Performance of the Contract Numbered NFL20170220

In accordance with the Contract, the total quantity of cloth purchased by the Respondent from the Applicant is 72,000KGS, with a total amount of USD 452,880. The place of delivery is LDP MEXICO (Landed-Duty Paid) and the payment method is OA 180days (payment within 180 days after the goods are shipped).

After the signing of the Contract, the Applicant consigned the goods under the Contract to the shipping company CCNI for transportation. On June 20, 2017, the Respondent applied to the Applicant for the Telex Release Bill of Lading, and then issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Telex Release Bill of Lading will be made within 180 days after the goods are shipped. On June 26, 2017, the shipping company CCNI issued an Telex Release Bill of Lading to the Applicant showing that the goods had been loaded on board. On June 30, 2017, the Applicant sent the Telex Release Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on July 16, 2017, and the Respondent picked up the goods by the Telex Release Bill of Lading.

In accordance with the Contract, the Respondent shall pay off above-mentioned amount under the Contract prior to December 23, 2017. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The total principal amount of the loan under the aforesaid contract is USD 142,434.53.

3.   Terms and Performance of the Contract Numbered NFL20170221-2

In accordance with the Contract, the total quantity of cloth purchased by the Respondent from the Applicant is a total of 240,000KGS, with a total amount of USD 1,509,600. The place of delivery is LDP MEXICO (Landed-Duty Paid) and the payment method is OA 180days (payment within 180 days after the goods are shipped).

After the signing of the Contract, the Applicant consigned the goods under the Contract to CCNI for transportation in two batches. On June 26, 2017, the Respondent applied to the Applicant for the Telex Release Bill of Lading, and then issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Telex Release Bill of Lading would be made 180 days after the goods are shipped. On June 26, 2017, the shipping company CCNI issued an Telex Release Bill of Lading to the Applicant showing that the goods had been loaded on board. On June 30, 2017, the Applicant sent the Telex Release Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The

3

goods arrived at the destination port on July 16, 2017, and the Respondent picked up the goods by the Telex Release Bill of Lading.

In accordance with the Contract, the Respondent shall pay off above-mentioned amount under the Contract prior to December 23, 2017. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The total principal amount of the loan under the aforesaid contract is USD 283,907.33.

4. Terms and Performance of the Contract Numbered NFL20170511

In accordance with the Contract, the total amount of cloth purchased by the Respondent from the Applicant is 21,810KGS, with a total amount of USD 144,816.7. The place of delivery is LDP MEXICO and the payment method is OA 180days (payment within 180 days after the goods are shipped).

After the signing of the Contract, the Applicant consigned the goods under the Contract to the shipping company CCNI for transportation. On June 26, 2017, the Respondent applied to the Applicant for the Telex Release Bill of Lading, and then issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Telex Release Bill of Lading would be made 180 days after the goods are shipped. On June 26, 2017, the shipping company CCNI issued an Telex Release Bill of Lading to the Applicant showing that the goods had been loaded on board. On June 30, 2017, the Applicant sent the Telex Release Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on July 16, 2017, and the Respondent picked up the goods by the Telex Release Bill of Lading.

In accordance with the Contract, the Respondent shall pay off above-mentioned amount under the Contract prior to December 23, 2017. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The principal amount of the loan under the aforesaid contract is USD 146,927.93.

5. Terms and Performance of the Contract Numbered NFL20170513

In accordance with the Contract, the total amount of cloth purchased by the Respondent from the Applicant is 21,810KGS, with a total amount of USD 144,816.7. The place of delivery is LDP MEXICO and the payment method is OA 180days (payment within 180 days after the goods are shipped).

After the signing of the Contract, the Applicant consigned the goods under the Contract to the shipping company CCNI for transportation. On June 20, 2017, the Respondent applied to the Applicant for the Telex Release Bill of Lading, and then issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Telex Release Bill of Lading will be made within 180 days after the goods are shipped. On June 26, 2017, the shipping company CCNI issued an Telex Release Bill of Lading to the Applicant showing that the goods had been loaded on board. On June 30, 2017, the Applicant sent the Telex Release Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on July 16, 2017, and the Respondent picked up the goods by the Telex Release Bill of Lading.

In accordance with the Contract, the Respondent shall pay off above-mentioned amount under the Contract prior to December 23, 2017. Upon the repeated reminders by the Applicant, the

Respondent still refused to pay. The principal amount of the loan under the aforesaid contract is USD 143,925.32.

Under above-mentioned five Contracts, the principal of the Loan amounts to USD 817,245.83 and the interests arising therefrom amounts to USD 35,749.37 (calculated from the date of payment, provisionally till October 29, 2018, at 5.05% of the Bank's loan interest rate for the same period), totaling USD 852,995.2.

The Applicant Submitted the Following Arbitration Claim:

1.   The Respondent shall immediately pay the Applicant the payment for the goods of USD 817,245.83 and the interests arising therefrom of USD 35,749.37 (calculated from the date of payment, provisionally till October 29, 2018, at 5.05% of the Bank's loan interest rate for the same period);

The aforesaid amount is provisionally USD 852,995.2

2.   The Respondent shall reimburse the travel expenses incurred by the Applicant for the Case;

3.   The arbitration and preservation fees for the Case shall be assumed by the Respondent.

Subsequently, the Applicant submitted an Explanatory Letter for Changing the Arbitration Claim to change the first arbitration claim mentioned above to:

The Respondent shall immediately pay the Applicant the payment for the goods of USD 817,245.83 and the interests arising therefrom of USD 33,635.64 (calculated from the date of payment, provisionally till October 29, 2018, at the interest rate of [one to five years] of medium and long-term loans of the People's Bank of China, i.e. 4.75% per year, accrued to the date of actual payment by the Respondent)

(II) Oral Defense by the Respondent at the Hearing

The Respondent failed to submit any written defense documents. The oral defense during the hearing is concluded as follows:

The Respondent submitted to the court the form unilaterally prepared, sorted out a total of more than 30 containers, and then made LDP, under which the container number of each container was indicated with the purchase amount of LDP purchased by one company, and explicitly stated with the customs clearance fee paid by the Applicant. Because as agreed, the Applicant would send the containers from China and remit the customs fees due from Mexico to the Respondent in time. The Customs Declaration Form should be delivered to the customs in time so that the Respondent's goods would not be delayed and be cleared and picked up in time. Above-mentioned form submitted by the Respondent has listed each container in great detail, including all containers of LDP and all transactions. ETD is the expected time for the container to arrive at the Mexican Port. ETD is the expected time to depart from Xiamen or Ningbo. ETA is the expected time to arrive at Mexico.

According to the international practice, LDP means that the Applicant pays the customs duty and then the goods are delivered to the Respondent. From this commercial concept, it is impossible to pick up the goods without paying the customs duty. If the goods are not picked up, the Respondent will not approve the transaction, since the Respondent pays the price after customs duties are included.

5

LDP MEXICO (Landed-Duty Paid) Generally speaking, goods need to be cleared one week in advance during the process of international trade so that the customs has sufficient time to review the information. Therefore, the delayed purchase of containers will lead to a necessity for the Respondent to pay the demurrage fee to the local port, and the container needs to be rented for loading, so it also needs to pay relevant fee to the shipping company.

From Xiamen/Ningbo to Mexico, if a container is detained by the customs for one month, the Respondent must pay an extra month's rent, i.e. the empty container fee. The empty container fee is USD 275 per day, the demurrage fee is USD 275, and the Respondent has to pay USD 550 per day for the delay. As a business partner, the Respondent has not claimed the delay fee from the Applicant, but it is assumed by the Respondent independently, thus paying a large fee to the customs. Therefore, the Applicant needs to pay 1566 * USD 550 to the customs for the delayed payment of import duties, customs clearance fees, demurrage fees and empty container fees.

In international trade, if the goods are delayed for one week, few customers will accept the goods, since the claim cost of the goods is very huge, including the demurrage fee, empty container fee, rent and customs fines. If the delay exceeds 60 days, the customs will confiscate the goods.

In the past, every container of the Respondent was profitable and delivered to the customer on schedule. These bank records are kept by both the Applicant and the Respondent. In particular, textiles have strong seasonal characteristics. The thickness and color are very seasonal. After a certain season, they will be no longer popular and thus become stock. The clients of the Respondent are all large-scale local-scale dyeing factories in Mexico, purchasing the fabric dyed by the Respondent, as well as large-scale garment factories in Mexico who buy fabrics from the Respondent and process them into garments for sale to Wal-Mart and other large-scale retail chains. If the Respondent's cloth is delayed for more than a month, the clothing factory will not be able to deliver the finished product to Wal-Mart, and Wal-Mart will claim for an indemnity from the clothing factory if it cannot complete the scheduled plan. After that, the clothing factory will also refuse to accept the delayed goods of the Respondent and claim for an indemnity from the Respondent. Finally, once the cloth is out of date, even if it is sold at a discount, it is very difficult to sell it again.

To sum up, the Applicant's delay in paying import duties and customs clearance fees has caused the Respondent to incur such losses as the demurrage fees, container rents and empty container fees at the local port, and therefore the Respondent has the right to refuse to pay for the goods.

(III) Applicant's Statement of Attorney

First of all, the Applicant stated to the Arbitration Tribunal that according to the actual situation of the hearing, both the Applicant and the Respondent in the Case acknowledged CRYSTAL VOGUE INC. (i.e. the Respondent in the Case), PEACE BIRD TRADING CORP and XING LIN (USA) INTERNATIONAL CORP. are enterprises controlled by the same actual controller. Any of above-mentioned three enterprises' expressions of will (e.g. payment instructions, payment commitments, etc.) may be deemed as those of the other two, and shall not be limited to the actual expression of will.

1.  The Applicant has fulfilled the obligation to deliver all the goods under the Contract for litigation as agreed, and the Respondent shall pay for the goods.

In the five contracts involved in the Case, the Respondent has issued an unconditional Letter of

6

payment Guarantee. According to the terms of the guarantee, the Respondent shall make unconditional payment within 180 days after the goods are shipped. The Applicant has delivered the certificate of shipment of the goods (i.e. bill of Lading), and the Respondent also acknowledges in the court that it has received all the goods under the Contract for litigation. Therefore, regardless of any risks such as loss of goods or import customs clearance, the Respondent shall undertake the obligation of unconditional payment subject to the commitments made under the Letter of Payment Guarantee.

2.   The Respondents defense of refusing to pay for the goods on the ground that the Applicant delayed payment of the import duty of the subject goods (hereinafter referred to as the "payment") caused losses to the Respondent (hereinafter referred to as the "loss") cannot be established.

(1)  Under the CIF Contract for litigation, the Applicant will not assume the obligation of import clearance and will not assume the losses arising therefrom.

According to *Incoterms 2010*, under CIF terms, it will be deemed a delivery of goods by the Seller if the goods are shipped on board. When the goods are shipped on board, the risk of loss of or damage to the goods will be transferred together. After the goods are transported to the destination, the Buyer shall assume all risks and expenses, and the Seller shall not be required to pay the import payment or undertake the obligation of import customs clearance. Specifically, in the Case, the Applicant, as the Seller of the Contract for litigation, does not undertake the obligation of import customs clearance and does not need to go through any import customs formalities, so there is no problem of the loss of the Respondent caused by the delay in the payment by the Applicant.

(2)  Under the LDP Contract for litigation, the Respondent is the customs clearance obligor of the underlying goods, and shall assume the customs clearance responsibility on its own. The Applicant has no delay in payment, and the Respondent has no right to claim damages from the Applicant.

①  The Respondent is the customs clearance obligor of the underlying goods. The Applicant does not bear the import customs clearance responsibility, and the Respondent shall assume the customs clearance responsibility by itself.

In accordance with the *Letter of Undertaking* issued by the Respondent to the Applicant in June 2017, it is explicitly stated that the Respondent will have full control over all customs clearance procedures for containers from the destination port to the Respondent's warehouse. The risks of all these procedures shall be assumed by the Respondent. The *Letter of Undertaking* has made it very clear that the Respondent is the responsible person for the customs clearance for the underlying goods and the Applicant does not have any obligation of customs clearance.

The Respondent, at the place of receipt and customs clearance, shall undoubtedly be familiar with the local customs clearance policy. As the responsible person for the customs clearance, it shall handle the customs clearance of the goods at the first time and pay the money to enable the normal import of goods. However, the Respondent has not properly and timely performed the obligation of customs clearance. All risks and losses arising from the customs clearance (including but not limited to the delay in the customs clearance) shall be assumed by the Respondent.

②There is No Delay in Payment by the Applicant

a.   There is no agreement on the time of payment in the Contract for litigation. If the Respondent requires the Applicant to pay the money, it shall notify the Applicant in advance and leave the Applicant the necessary preparation time.

In accordance with the *Explanatory Letter* provided by the Applicant to the Arbitration Tribunal, the Applicant believed that the Chinese law shall apply to the Case. Pursuant to the provisions set forth in *the Contract Law of the People's Republic of China*, if the time limit for the performance of contractual obligations is unclear, the debtor may perform all the times and the creditor may demand performance all the times, but the other Party hereof shall be given the necessary preparation time. Since the Respondent requires the Applicant to fulfill the payment obligation, it shall inform the Applicant in advance and shall reserve the necessary preparation time for the Applicant. Specifically, in the Case, upon the receipt of the payment instructions from the Respondent, the Applicant will actively arrange the payment and pay the money to the Respondent within a reliable time without any delay in payment.

b.   Both Parties Hereof to the Transaction Are Fully Aware of China's Foreign Exchange Control Policies, and the Reliable time for Payment Due to the Foreign Exchange Control Shall Not Be Deemed as a Delay in Payment

It may be seen from the chat records of both Parties hereof to the transaction and the *Letter of Undertaking* that the Respondent was fully aware of China's foreign exchange control policies at the time of signing and performing the Contract, and had pre-judgment on the actual situation that foreign exchange payment requires a certain reliable payment time. From the chat records of the Parties hereof from May to June 2017 (i.e. when the goods have not yet arrived at the port), it may be found that the Applicant's staff Jiang Shufang has explicitly indicated to the Respondent's staff Feng Xu that the Applicant cannot directly make the payment abroad. The Respondent's staff has no objection to this. In the meanwhile, it provided various channels and hoped the Applicant can transfer the relevant money to the corresponding domestic account designated by the Respondent to solve this problem. In WeChat and telephone chats of the relevant persons of the Respondent, they have repeatedly pointed out that the remittance risks arising therefrom shall be assumed by them together. Therefore, at the beginning of the transaction, both Parties hereof to the transaction have fully estimated and understood the reliable time for payment, and have made corresponding adjustments to the payment method during the performance of the Contract. It is inappropriate for the Respondent to deem the reliable time for payment caused by foreign exchange control as a delay in payment.

c.   The Applicant has paid the money to the Respondent in full and on schedule within the limits of its ability, without any delay in payment.

As stated by the Applicant in the agent's Statement of Attorney for the Case No G20181782 (i.e. the Sales and Purchase Contract under dispute between the Applicant and PEACE BIRD TRADING CORP), under the circumstance that it is difficult for the money to be remitted directly, the Applicant, adhering to the principle of good faith, remitted the money to the third person designated by the Applicant at the first time as instructed by PEACE BIRD TRADING CORP. In the Case, despite of no direct payment instruction from the Respondent, the Respondent admitted in the court that it had received all the money due from the Applicant in full.

To sum up, neither the law nor the practices stipulate/specify the time for the Seller to make the payment under LDP terms. If the Respondent requires the Applicant to fulfill the payment

obligation, it shall inform the Applicant in advance and reserve the necessary preparation time for the Applicant. In addition, the Parties hereof have been fully aware of China's foreign exchange control policies at the time of signing and performing the Contract, and the Parties hereof have pre-determined in advance the preparation time required for foreign exchange payment. The Respondent shall not regard the reliable time of receipt of funds due to the foreign exchange control as the delay in payment of funds. The Applicant has adhered to the principle of honesty and credit, and has paid the money to the Respondent in full and on schedule within its capabilities, without any delay in payment.

③The Respondent failed to provide the evidence, so the Applicant shall not be held held liable for indemnity.

As the Respondent failed to provide the corresponding basic evidence to support the "materials" submitted in court, the Applicant was unable to question the authenticity and legality of the "materials". From the content shown in the "materials", it was not relating to the losses claimed by the Respondent and could not prove the losses suffered.

If the Respondent believed that the act of the Applicant has caused any losses to it, it shall provide the evidence for the losses, but the Respondent has not provided any evidence, so it is impossible to indemnify for the losses arising therefrom. In view of the unclear cause of the claim and the unclear amount of indemnity, the Applicant shall not assume any liability for indemnity against the Respondent.

It is worth mentioning that in August 2017, when the goods payment under LDP was subject to the foreign exchange supervision and it was difficult to pay foreign exchange, PEACE BIRD TRADING CORP still issued multiple Payment Guarantees to the Applicant. Although the main issue of the Letter of Payment Guarantee was PEACE BIRD TRADING CORP, as mentioned above, it may also be deemed as the intention of the Respondent in the Case. It may be found that the Respondent in the Case did not raise any objection to the payment issue at that time, nor did it mention the claim against the Applicant. In the WeChat chat between the Applicant's salesman Jiang Shufang and FENGXU (the actual operator of the Respondent) in September 2017, when the Applicant asked for the relevant payment, the Respondent only repeatedly asked for deferred payment and never claimed for indemnity against the losses arising therefrom. It may be found that the Respondent's defense about the Applicant's delay in payment during the hearing is totally groundless and is only an excuse to evade the payment obligation to the Applicant.

(IV)Explanatory Letter from the Applicant

1. Regarding the Selection of Interest Rate in the First Arbitration Claim

First of all, according to the approval of the Supreme People's Court on the calculation standard of the liquidated damages for overdue payment, if the Parties concerned have no agreement on the liquidated damages for overdue payment, the People's Court may calculate the liquidated damages for overdue payment according to the standard of interest charged on overdue loans by financial agencies stipulated by the People's Bank of China. Due to the great uncertainty of foreign currency loan interest rate and the implementation of foreign exchange control in our country, foreign currencies must be converted into RMB before circulation in China. Therefore, the Applicant chose the loan interest rate of the People's Bank of China for the same period as the basis for calculating the interests for the Case. This view has been adopted by relevant courts (please refer to (2011) S.S.W.Z.Z. No. 7)

Since the maturity date of the money involved has been more than one year ago, the Applicant has chosen the current interest rate of the People's Bank of China for medium and long-term loans (one to five years), i.e. the annual interest rate of 4.75%, as the interest rate for the Case. The relevant calculation process is presented in the following Table.

| Contract No. | Signing Date of the Contract | Total Amount of Goods | Date on Which the Shipping Company Issues the Bill of Lading | Due Date of Payment | Provisional Amount | Number of Days | Provisional Interest |
|---|---|---|---|---|---|---|---|
| NLF20170221-1 | February 10, 2017 | $100,050.72 | June 11, 2017 | December 8, 2017 | October 29, 2018 | 325 | $4,290.37 |
| NLF20170220 | February 10, 2017 | $142,434.53 | June 26, 2017 | December 23, 2017 | October 29, 2018 | 310 | $5,825.97 |
| NLF20170221-2 | February 10,2017 | $142,276.03 | June 26, 2017 | December 23, 2017 | October 29, 2018 | 310 | $5,819.48 |
| NLF20170221-2 | February 10,2017 | $141,631.30 | June 26, 2017 | December 23, 2017 | October 29, 2018 | 310 | $5,793.11 |
| NLF20170511 | May 10,2017 | $146,927.93 | June 26, 2017 | December 23, 2017 | October 29, 2018 | 310 | $6,009.76 |
| NLF20170513 | May 10,2017 | $143,925.32 | June 26, 2017 | December 23, 2017 | October 29, 2018 | 310 | $5,886.95 |

| Total Principal | $817,245.83 |
|---|---|
| Total Interest (Provisional) | $33,625.64 |
| Total Principal and Interests | $850,871.47 |

Interest Calculation Instructions: According to the Letter of Payment Guarantee, the Respondent commits to pay 180 days after the date of Bill of Lading. Based on this, the due date of payment is calculated at the interest rate of 4.75% per year for medium and long-term loans (one to five years) of the Peoples Bank of China. The calculation formula is as follows: (actual payment date-due date of payment) * 4.75%/360 * Payment amount

2.   Regarding the Applicable Law for Contracts for Litigation

According to the Article 41 of the Law of the People's Republic of China on Choice of Law for Foreign-related Civil Relationships, if the Parties hereof have no choice in the applicable law for Contract, the law of the permanent residence of the party whose performance of obligations best reflects the characteristics of the Contract or other laws most closely relating to the Contract shall apply.

From the point of view of the performance of the characteristics of the Contract for litigation, the Case is a sale contract dispute, and the performance of the characteristics of the sale contract is the

10

delivery of goods and the collection of payment for goods. The goods in the Case were sent from China, and the payment for goods in accordance with the Contract shall also be collected by the Parties in China. Therefore, there is no doubt that Chinese law shall apply.

From the point of view of the closest connection, the place where the Contract for litigation is most closely connected may be place of performance for the Contract, the place where the Contract is executed, and the residence of the Parties hereof. With reference to the determination of the place of performance for the Contract in the civil procedure law, in case of no agreement on the place of performance or the Agreement is not clear, and the subject under dispute is the payment currency, the place of performance for the Contract shall be place at the location of the party receiving the currency; Where other subject is delivered, the place where the party performing the obligation is located shall be place of performance for the Contract. Thus, the place of performance for the Contract involved shall be in China, and the Applicant is a party in China, so Chinese law shall apply from this power of view.

Finally, the place of arbitration for the Case is in China, and both Parties hereof to the Contract for litigation have not raised any objection to the arbitration language being Chinese. The application of Chinese law is more conducive to the investigation and hearing of the Case.

To sum up, the Applicant claims that Chinese law shall apply to the hearing of the Case.

## II.  Opinions of the Arbitration Tribunal

(I)  Regarding the Applicable Law for the Contract under the Case

Both Parties hereof have not agreed on the applicable law for the Contract under the Case. In *the Explanatory Letter* submitted by the Applicant, it claimed that the Contract under the Case shall be governed by Chinese law and explained the reasons. The Respondent did not raise any objection to the Applicant's claim.

The Arbitration Tribunal held that judging from the most closely related factors of the Contract, the execution, performance and subjects of the Contract of the Contract under the Case are all closely connected with China, the goods of the five Contracts under the Case are all shipped and shipped from Chinese ports, the sellers party, i.e. the Applicant, is a Chinese company, and its habitual residence is in China, and the Respondent has no objection to the Applicant's claim to apply the Chinese law, so it is appropriate to take Chinese law as the applicable law for the Contract under the Case. In addition, the place of arbitration stipulated in the Contract for the Case is in China, and the application of the law of the place of arbitration, that is, Chinese law, is more convenient to hear and find out the Case. to sum up, the Arbitration Tribunal will take Chinese law as the applicable law to settle the disputes in the Contract under the Case.

In the meanwhile, the Contract under the Case stipulated the delivery terms of CIF or LDP. The Applicant quoted *Incoterms 2010* and the Respondent did not raise any objection to this. Therefore, the Arbitration Tribunal may also apply *Incoterms 2010* to resolve the disputes in the Contract under the Case.

(II) Regarding the Validity of the Contract under the Case

The Arbitration Tribunal held that both the Applicant and the Respondent are legal persons incorporated in accordance with their respective national laws, and both are eligible subjects for executing the Contract. The Agreement reached between the Applicant and the Respondent reflects

11

the true intention of both Parties hereof. The contents of the Contract under the Case did not violate the mandatory provisions of Chinese laws and administrative regulations, and neither Party hereof raised any objection to the validity of the Contract. Therefore, the Contract under the Case is valid and legitimately binding on both Parties hereof. Both the Applicant and the Respondent shall exercise their rights, perform their obligations and assume their responsibilities in accordance with the Contract.

(III) Regarding the Performance of the Contract under the Case

After hearing and examining the evidence, the Arbitration Tribunal confirmed the following facts:

And the Applicant's executed five copies of CRYSTAL VOGUE INC. CONTRACT contracts on February 10, 2017 and May 10, 2017, with the numbers NFL20170221 (2 in total, the numbers differ from NFL20170221-1 and NFL20170221-2), NFL20170220, NFL20170511 and NFL20170513. According to the aforesaid Contract Agreement, the Respondent purchases cloth from the Applicant, the Applicant delivers goods to the Respondent as agreed, and the Respondent pays the Applicant for goods as agreed. The Arbitration Tribunal found that the actual amount performed for the Contract was not exactly identical with the amount agreed in the Contract, since the Contract agreed on a framework clause, and the actual amount performed was composed of a Bill of Lading and a Letter of Guarantee. The aforesaid contract terms and performance are concluded as follows:

1) Contract Numbered NFL20170221-1

In accordance with the Contract, the total quantity of cloth purchased by the Respondent from the Applicant is 336,000KGS, with a total amount of USD 1,490,400. The place of delivery is CIF MEXICO and the payment method is OA 180days (payment within 180 days after the goods are shipped).

The Applicant consigned the goods under the Contract to the shipping company CCNI for transportation. On June 12, 2017, the Respondent applied to the Applicant for the Telex Release Bill of Lading, and then issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Telex Release Bill of Lading will be made within 180 days after the goods are shipped. On June 11, 2017, the shipping company CCNI issued an Telex Release Bill of Lading to the Applicant showing that the goods had been loaded on board. On June 23, 2017, the Applicant sent the Telex Release Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on July 2, 2017, and the Respondent picked up the goods by the Telex Release Bill of Lading.

In accordance with the Agreement reached in the Contract and the commitments made in the Letter of Guarantee, the Respondent shall pay off the payment for the goods under the Contract prior to December 8, 2017. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The total amount of payment under the Contract is USD 100,050.72.

2) Contract Numbered NFL20170221-2

In accordance with the Contract, the total quantity of cloth purchased by the Respondent from the Applicant is a total of 240,000KGS, with a total amount of USD 1,509,600. The place of delivery is LDP MEXICO (Landed-Duty Paid) and the payment method is OA 180days (payment within 180 days after the goods are shipped).

12

The Applicant consigned the goods under the Contract to the shipping company CCNI for transportation in two batches. On June 26, 2017, the Respondent applied to the Applicant for the Telex Release Bill of Lading, and then issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Telex Release Bill of Lading would be made 180 days after the goods are shipped. On June 26, 2017, the shipping company CCNI issued an Telex Release Bill of Lading to the Applicant showing that the goods had been loaded on board. On June 30, 2017, the Applicant sent the Telex Release Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on July 16, 2017, and the Respondent picked up the goods by the Telex Release Bill of Lading.

In accordance with the Agreement reached in the Contract and the commitments made in the Letter of Guarantee, the Respondent shall pay off the payment for the goods under the Contract prior to December 23, 2017. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The total amount of payment under the Contract is USD 283,907.33.

3)   Contract Numbered NFL20170220

In accordance with the Contract, the total quantity of cloth purchased by the Respondent from the Applicant is 72000KGS, with a total amount of USD 452,880. The place of delivery is LDP MEXICO (Landed-Duty Paid) and the payment method is OA 180days (payment within 180 days after the goods are shipped).

The Applicant consigned the goods under the Contract to the shipping company CCNI for transportation. On June 20, 2017, the Respondent applied to the Applicant for the Telex Release Bill of Lading, and then issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Telex Release Bill of Lading will be made within 180 days after the goods are shipped. On June 26, 2017, the shipping company CCNI issued an Telex Release Bill of Lading to the Applicant showing that the goods had been loaded on board. On June 30, 2017, the Applicant sent the Telex Release Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on July 16, 2017, and the Respondent picked up the goods by the Telex Release Bill of Lading. In accordance with the Agreement reached in the Contract and the commitments made in the Letter of Guarantee, the Respondent shall pay off the payment for the goods under the Contract prior to December 23, 2017. Applicant has repeatedly urged the Respondent, but the Respondent still refused to pay. The total amount of payment under the Contract is USD 142,434.53.

4)   Contract Numbered NFL20170511

As provided for under the Contract, the total amount of cloth purchased by the Respondent from the Applicant is 21810KGS, with a total amount of USD 144,816.7. The place of delivery is LDP MEXICO (Landed-Duty Paid) and the payment method is OA 180days (payment within 180 days after the goods are shipped of goods).

The Applicant consigned the goods under the Contract to the shipping company CCNI for transportation. On June 26, 2017, the Respondent applied to the Applicant for the Telex Release Bill of Lading, and then issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Telex Release Bill of Lading would be made 180 days after the goods are shipped. On June 26, 2017, the shipping company CCNI issued an Telex Release Bill of Lading to shipped. On June 26, 2017, the shipping company CCNI issued an Telex Release Bill of Lading to

the Applicant showing that the goods had been loaded on board. On June 30, 2017, the Applicant sent the Telex Release Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on July 16, 2017, and the Respondent picked up the goods by the Telex Release Bill of Lading.

In accordance with the Agreement reached in the Contract and the commitments made in the Letter of Guarantee, the Respondent shall pay off the payment for the goods under the Contract prior to December 23, 2017. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The amount of the Loan under the Contract is USD 146,927.93.

5) Contract Numbered NFL20170513

In accordance with the Contract, the total amount of cloth purchased by the Respondent from the Applicant is 21810KGS, with a total amount of USD 144,816.7. The place of delivery is LDP MEXICO and the payment method is OA 180days (payment within 180 days after the goods are shipped)

The Applicant consigned the goods under the Contract to the shipping company CCNI for transportation. On June 20, 2017, the Respondent applied to the Applicant for the Telex Release Bill of Lading, and then issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Telex Release Bill of Lading will be made within 180 days after the goods are shipped. On June 26, 2017, the shipping company CCNI issued an Telex Release Bill of Lading to the Applicant showing that the goods had been loaded on board. On June 30, 2017, the Applicant sent the Telex Release Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on July 16, 2017, and the Respondent picked up the goods by the Telex Release Bill of Lading.

In accordance with the Agreement reached in the Contract and the commitments made in the Letter of Guarantee, the Respondent shall pay off the payment for the goods under the Contract prior to December 23, 2017. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The amount of the Loan under the Contract is USD 143,925.32.

The total amount payable under the aforesaid five contracts is USD 817,245.83. For the aforesaid payable payment, the Respondent has issued a payment commitment guarantee. According to the terms of the guarantee, the Respondent shall pay the payment within 180 days after the goods are shipped. The Applicant submitted the certificate of shipment (i.e. bill of Lading) and the Respondent admitted to receiving all the goods under the five contracts at the arbitration hearing. Therefore, after the Applicant has performed the obligation to deliver the goods, the Respondent shall perform the corresponding payment obligation in accordance with the Contract and the commitments made under the Letter of Payment Guarantee.

The Arbitration Tribunal found that the Respondent proposed at the hearing that the delay in payment of import duties and customs clearance fees caused the Respondent to incur such losses as the demurrage fees, container rents and empty container fees at the local port, and therefore had the right to refuse to pay for the goods, but the Respondent failed to provide any evidence to support its claim in court or after the court. In response, the Applicant submitted a statement in the "Statement of Attorney" after the court: The Applicant failed to delay the payment of the funds. In the event of

14

changes in foreign exchange management policies and difficulties in foreign exchange payment, the Applicant actively negotiated with the Respondent to find a solution. Both Parties hereof made corresponding adjustments to the payment method of the funds. The Applicant remitted the funds to the third person designated by the Respondent as instructed by the Respondent. The Respondent also admitted to having received all the funds paid by the Applicant at the court session. In addition, the Respondent failed to provide the evidence to prove that it suffered losses, therefore, the respondents argument was only to find excuses for its failure to fulfill its payment obligations.

The Arbitration Tribunal held that among the five Contracts under the Case, the Contract No NFL20170221-1 agreed on a CIF delivery clause. According to *Incoterms 2010*, under CIF terms, the Seller delivers the goods on board the ship, and the risk of loss or damage to the goods is transferred from the Seller to the Buyer, i.e. the Buyer assumes all risks and expenses after the goods are delivered. The Seller does not have to pay import duties and does not assume the obligation of customs clearance for the goods. The other four contracts (numbered NFL20170221-2, NFL20170220, NFL20170511, NFL20170513 respectively) stipulate the delivery terms of LDP MEXICO. According to *Incoterms 2010*, LDP is the destination port to deliver the goods duty-paid. The Seller shall handle the import clearance formalities of the goods at its own risk and expense, including providing the import license, bearing the import duties, customs inspection fees, and any other taxes or fees that need to be paid due to the import and delivery of the goods to the Buyer. However, an finding of fact in the performance of the Contract under the Case is that the Respondent issued a *Letter of Undertaking* to the Applicant on June 1, 2017 (see Group 11.1 of the third evidence submitted by the Applicant), explicitly committing that the Respondent would: Purchase insurance for the goods from the destination port to the respondents warehouse on its own; Agree that the Applicant's freight forwarding company and the Respondent shall operate all LDP processes together; to control all steps of the customs clearance of goods from the destination port to the respondents warehouse, and all risks arising therefrom shall be assumed by the Respondent; Pay 4% more of the customs clearance fee to indemnify the Applicant for the cost of paying LDP for the Respondent. In fact, the *Letter of Undertaking* has amended the LDP delivery terms agreed upon by both Parties hereof in the afore-mentioned contract. Via the Letter of Undertaking, the Respondent becomes the customs clearance obligor for the import of goods under the Contract under the Case, and assumes the responsibilities and risks for the customs clearance of goods. The Applicant no longer assumes the responsibilities and risks for the customs clearance of the imported goods. Therefore, during the performance of the Contract under the Case, the risks and losses arising from the delayed customs clearance and delivery of the goods due to the respondents failure to properly and timely handle the customs clearance formalities, including the demurrage fees, empty container fees, rent, customs fines, etc., shall be assumed by the Respondent.

To sum up, the Arbitration Tribunal does not approve the Respondent's defense of refusing to pay for the goods. The respondents refusal to pay for the goods constitutes a breach of the Contract. According to the Articles 107 and 109 of *the Contract Law of the People's Republic of China*, the Respondent shall assume the liability for the breach of the Contract and indemnify the relevant losses caused to the Applicant due to its breach of the Contract.

(IV) Regarding the Arbitration Claim by the Applicant

For the Respondent's breach of the Contract, the Applicant submitted the following arbitration claim:

1.  The Respondent shall immediately pay the Applicant the payment for the goods of USD

15

817,245.83 and the interests arising therefrom of USD 33,635.64 (calculated from the date of payment, provisionally till October 29, 2018, at the interest rate of [one to five years] of medium and long-term loans of the People's Bank of China, i.e. 4.75% per year, accrued to the date of actual payment by the Respondent)

Regarding the request for the payment of goods, according to the Arbitration Tribunal's determination of the fact of performing the Contract, the Applicant has performed the obligation to deliver the goods in accordance with the Contract, and the Respondent shall perform the obligation to pay the corresponding payment of goods. The total payment payable under the five contracts involved in the Case is USD 817,245.83. Therefore, the Arbitration Tribunal supports the Applicant's request for the Respondent to pay USD 817,245.83.

Regarding the interests claim, the Applicant, according to the judicial interpretation of the Supreme People's Court on the calculation standard of the liquidated damages for overdue payment, chose the long-term and medium-term RMB loan interest rate for financial agencies stipulated by the People's Bank of China to calculate the liquidated damages for overdue payment in the Case, and adduced relevant judgment of the People's Court to support its claim. The Respondent did not raise any objection or defense to this claim. In the change of the arbitration claim submitted by the Applicant after the hearing, the loan interest rate for calculating overdue payment interest in the arbitration claim was changed from 5.05% to 4.75% for medium and long-term loans of the People's Bank of China, and the interest calculation method and formula were submitted. The Arbitration Tribunal held that the performance of the Contract under the Case was in 2017, and the overdue payment under the Contract had exceeded two years, so it was appropriate for the Applicant to calculate the overdue payment interest at an annual interest rate of 4.75%, and the Arbitration Tribunal supported it. Therefore, the Respondent shall pay to the Applicant the interests arising therefrom of USD 33,625.64 provisionally calculated until October 29, 2018, at an annual interest rate of 4.75% with USD 817,245.83 as the principal from October 30, 2018 until the actual payment date by the Respondent.

2.   The Respondent shall reimburse the travel expenses incurred by the Applicant for the Case. The Applicant failed to submit any evidence for its request, so the Arbitration Tribunal failed to support the claim.

3.   The arbitration and preservation fees for the Case shall be assumed by the Respondent. According to the hearing of the Case, the Arbitration Tribunal ruled that the arbitration fee for the Case shall be assumed by the Respondent. As for the preservation fee, the Arbitration Tribunal failed to support the claim as the Applicant failed to submit relevant evidence.

## III. Award

After hearing and discussing together, the Arbitration Tribunal ruled as follows:

(I)   The Respondent shall pay USD 817,245.83 to the Applicant for the goods payable;

(II) The Respondent shall pay to the Applicant the interests arising therefrom of USD 33,625.64 provisionally calculated until October 29, 2018, at 4.75% per annum with USD 817,245.83 as the principal from October 30, 2018 to the actual payment date by the Respondent;

16

(III)The arbitration fee for the Case is RMB 174,970 yuan, all of which shall be assumed by the Respondent. Since the Applicant has paid the arbitration fee in advance, the Respondent shall pay the arbitration fee of RMB 174,970 yuan paid by the Applicant.

(IV)Reject the Applicant's Other Arbitration Claims

The aforesaid amounts shall be paid within 30 days from the date of this award.

This award is final and effective from the date of its making.

(This Page Intentionally Left Blank)

Chief arbitrator: Zhou Xiaoyan(signature)

Arbitrator: Tang Gongyuan(signature)

Arbitrator: Liu Jing(signature)

Beijing, March 10, 2020

(Seal) China International Economic and Trade Arbitration Commission



China International Economic and Trade Arbitration Commission

NOTARIAL CERTIFICATE
( Translation )

(2020) XM LJ ZI NO.4209

Applicant: Xiamen ITG Group Corp., Ltd., Unified Social Credit Code: 913502001550054395, address: Unit 2801, Guomao Center, No. 4688, Xianyue Road, Huli District, Xiamen City.

Legal Representative: Xu Xiaoxi, male, born on November 1, 1969, ID Card Number: 350203196911014014.

Authorized Agent: Li Bowen, male, born on March 18, 1986, ID Card Number: 430524198603180034.

Notarized Item: Arbitral Award

This is to certify that the original paper of Arbitral Award issued on March 10, 2020 to Xiamen ITG Group Corp., Ltd. by China International Economic and Trade Arbitration Commission is in conformity with the duplicate copy attached hereto, and the original paper is found to be authentic.

Notary: Yan Xiaoping
Xiamen Lujiang Notary Public Office
Fujian Province
The People's Republic of China
April 27, 2020

I V51848440

# 公　　证　　书

（2020）厦鹭证字第 4210 号

申请人：厦门国贸集团股份有限公司，统一社会信用代码：913502001550054395，住所：厦门市湖里区仙岳路 4688 号国贸中心 2801 单元。

法定代表人：许晓曦，男，一九六九年十一月一日出生，公民身份号码：350203196911014014。

委托代理人：李博文，男，一九八六年三月十八日出生，公民身份号码：430524198603180034。

公证事项：译本内容与原本相符

兹证明前面的（2020）厦鹭证字第 4209 号公证书的英文译本内容与该公证书中文原本相符。

中华人民共和国福建省厦门市鹭江公证处

公证员

二〇二〇年四月二十七日

I V51848439

# NOTARIAL CERTIFICATE

( Translation )

(2020) XM LJ ZI NO.4210

Applicant: Xiamen ITG Group Corp., Ltd., Unified Social Credit Code: 913502001550054395, address: Unit 2801, Guomao Center, No. 4688, Xianyue Road, Huli District, Xiamen City.

Legal Representative: Xu Xiaoxi, male, born on November 1, 1969, ID Card Number: 350203196911014014.

Authorized Agent: Li Bowen, male, born on March 18, 1986, ID Card Number: 430524198603180034.

Notarized Item: Translation is in conformity with the original paper

This is to certify that the content of the English translated copy of NOTARIAL CERTIFICATE <(2020) XM LJ ZI NO.4209> is in conformity with the Chinese original paper.

Notary: Yan Xiaoping

Xiamen Lujiang Notary Public Office

Fujian Province

The People's Republic of China

April 27, 2020

I V51848438