UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| XIAMEN ITG GROUP CORP., LTD., | Civil Action No.  21-cv-02813 |
| Petitioner, | |
| -against- | |
| CRYSTAL VOGUE, INC., | |
| Respondent. | |

---

**BRIEF IN OPPOSITION TO MOTION TO ENFORCE THE FOREIGN ARBITRATION**

---

**ARCHER & GREINER, P.C.**
Attorneys At Law
21 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 342-6000
Facsimile:  (201) 342-6611
*Attorneys for Respondent, Crystal Vogue, Inc.*

Of Counsel and on the Brief:

    Michael S. Horn. Esq.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................1

STATEMENT OF FACTS ...........................................................................2

RELEVANT PROCEDURAL HISTORY ...........................................................4

    POINT I: THE ARBITRATION WAS WAIVED BY FILING THE FIRST FILED
            CASE..........................................................................................5

        A.  WAIVER OF THE ARBITRATION PROVISION .......................................5

        B.  THE ENTIRE CONTROVERSY DOCTRINE...........................................6

        C.  THE FIRST-TO-FILE RULE .........................................................7

    POINT II: THE FOREIGN ARBITRATION FINDING IS UNENFORCEABLE .................8

        A.  OVERALL STANDARD ...............................................................8

        B.  THE FOREIGN ARBITRATION PROCEDURE VIOLATED PUBLIC
            POLICY AND DID NOT AFFORD CRYSTAL VOGUE THE
            OPPORTUNITY TO FULLY PRESENT ................................................9

        C.  THE ARBITRATION PROVISION IS NOT ENFORCEABLE.............................13

        D.  THE CONDITION PRECEDENT FOR ARBITRATION WAS NOT
            FULFILLED ...........................................................................18

        E.  THE DOCUMENTS SUBMITTED BY PETITIONER ARE
            PROCEDURALLY DEFECTIVE ......................................................19

    POINT III: PETITIONER'S MOTION IS PROCEDURALLY IMPROPER .......................20

    POINT IV: ITG IS LIABLE TO CRYSTAL VOGUE .........................................21

CONCLUSION.......................................................................................25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

Allianz Life Ins. Co. of N. Am. v. Estate of Bleich,
    2008 U.S. Dist. LEXIS 90720 (D.N.J. Nov. 6, 2008)...............................................7

Amstrong v. Manzo,
    380 U.S. 545 (1965)................................................................................................11

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)................................................................................................20

Andreoli v. Gates,
    482 F.3d 641 (3d Cir. 2007)....................................................................................20

Anhui Provincial Imp. and Exp. Corp. v. Hart Enters. Int'l, Inc.,
    No. 96-CV-0128, 1996 WL 229872 (S.D.N.Y. May 7, 1996) .................................9

Apothekernes Laboratorium for Specialpreaeparater v. I.M.C. Chern. Grp., Inc.,
    873 F.2d 155 (7th Cir. 1988) ..................................................................................19

AT&T Mobility LLC v. Concepcion,
    563 U.S. 333 (2011)................................................................................................17

Bank Melli Iran v. Pahlavi,
    58 F.3d 1406 (9th Cir 1995) ...................................................................................10

Bel–Ray Co., Inc. v. Chemrite (Pty) Ltd.,
    181 F.3d 435 (3d Cir.1999).....................................................................................16

Brody v. Hankin,
    145 F. App'x 768 (3d Cir. 2005) ...............................................................................6

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)................................................................................................20

China Minmetals Materials Imp. and Exp. Co., Ltd. v. Chi Mei Corp.,
    334 F.3d 274 (3d Cir.2003)...........................................................................8, 15, 16

Cornell & Co., Inc. v. Barber & Ross Co.,
    360 F.2d 512 (D.C.Cir.1966)....................................................................................5

Delchi Carrier SpA v Rotorex Corp.,
    71 F.3d 1024 (2d Cir. 1995).............................................................................22, 23

Doctor's Assocs., Inc. v. Casarotto,
    517 U.S. 681 (1996)..........................................................................................17

Doehla v Wathne Ltd., Inc.,
    No. 98 Civ. 6087, 1999 WL 566311 (S.D. NY Aug. 2, 1999) ................................24

E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber & Resin Intermediates,
    S.A.S, 269 F.3d 187 (3d Cir.2001) .......................................................................16

EEOC v. Univ. of Pa.,
    850 F.2d 969 (3d Cir. 1988).....................................................................................7

First Options of Chi., Inc. v. Kaplan,
    514 U.S. 938 (1995)..............................................................................................17

Forestal Guarani S.A. v. Daros International, Inc.,
    613 F.3d 395 (2010)..............................................................................................22

Geneva Pharmaceuticals Technology Corp. v. Barr Laboratories, Inc.,
    201 F. Supp. 2d 236, 2002–1 Trade Cas. (CCH) ¶ 73680 (S.D. N.Y. 2002),
    aff'd in part, rev'd in part and remanded on other grounds, 386 F.3d 485 (2d
    Cir. 2004) .............................................................................................................23

Geotech Lizenz AG v Evergreen Systems, Inc.,
    697 F. Supp. 1248, 1252 (E.D.N.Y. 1988). ...........................................................19

GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharm. Corp.,
    No. 05-898, 2005 U.S. Dist. LEXIS 40007 (D.N.J. May 10, 2005)........................7

Granite Rock Co. v. Int'l Brotherhood of Teamsters,
    No. 08–1214, slip op. (U.S. June 24, 2010)..........................................................16

Guidotti v. Legal Helpers Debt Resolution, L.L.C.,
    716 F.3d at 775 (2013)..........................................................................................16

Handan Haxing Toys v. Elko (USA), Ltd.,
    Civ Action No. CV-05-1310 (E.D. NY 2005) .......................................................12

Iran Aircraft Indus. v. Avco Corp.,
    980 F.2d 141 (2d Cir. 1992), rev'd on other grounds, 750 F.3d 221 (2d Cir.
    2014) .................................................................................................................9, 10

Jiangsu Changlong Chem. v. Burlington Bio-Med.,
    399 F. Supp. 2d 165 (2005) .....................................................................................9

Keating Fibre Int'l, Inc. v. Weyerhaeuser Co.,
    416 F. Supp. 2d 1048 (E.D. Pa. 2006) .....................................................................7

Mathews v. Eldridge,
    424 U.S. 319 (1976)................................................................................11

Min Fu v. Hunan of Morris Food Inc.,
    2103 WL 5970167, at *5 (App. Div. Nov. 6, 2013) ................................17

In re Mullarkey,
    536 F.3d 215 (3d Cir. 2008)......................................................................6

Nature's Benefit, Inc. v. NFI,
    *No*. 06-4836, 2007 U.S. Dist. LEXIS 62871 (D.N.J. Aug. 27, 2007)......7

New World Trading Co. v. 2 Feet Prods., Inc.,
    No. 11 CIV. 6219 SAS, 2014 WL 2039138 (S.D.N.Y. 2014), aff'd in part,
    remanded in part sub nom. New World Trading v. 2 Feet Prods., 652 F. App'x
    65 (2d Cir. 2016)......................................................................................23

Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.,
    636 F.2d 51 (3d Cir. 1980)......................................................................15

Paramount Aviation Corp. v. Agusta,
    178 F.3d 132 (3d Cir. 1999)......................................................................6

Quilloin v. Tenet HealthSystem Philadelphia, Inc.,
    673 F.3d 221 (3d Cir. 2012)....................................................................16

Rent-A-Center, W., Inc. v. Jackson,
    561 U.S. 63 (2010)..................................................................................17

Saint Tropez Inc. v. Ningbo Maywood Indus. & Trade Co.,
    No. 13 CIV 5230 NRB, 2014 WL 3512807 (S.D.N.Y. 2014)................23

Sandvik AB v. Advent Int'l Corp.,
    220 F.3d 99 (3d Cir. 2000)......................................................................15

Save Power Ltd. v. Syntek Fin. Corp.,
    121 F.3d 947 (5th Cir. 1997) ....................................................................7

Shanghai Contake Chemicals, Ltd. v. Gren Auto., Inc.,
    No. CIV.A. 08-6209 (JAP), 2009 WL 4509302 (D.N.J. Dec. 1, 2009)....8

Shaoxing Aceco Blanket Co. v. Aceco, Inc.,
    No. CV134937LDWGRB, 2015 WL 12659923 (E.D.N.Y. 2015), aff'd, 670 F.
    App'x 8 (2d Cir. 2016)..............................................................................22

Siemens Fin. Servs. v. Open Advantage M.R.I. II L.P.,
    No. 07-1229, 2008 U.S. Dist. LEXIS 15623 (D.N.J. Feb. 29, 2008) ........7

iv

Sonera Holding B.V. v. Cukurova Holding A.S.,
    895 F. Supp. 2d 513 (S.D.N.Y. 2012)........................................................................9

Specialty Ins. Agency, Inc. v. Walter Kaye Associates, Inc.,
    No. 89-1708, 1989 U.S. Dist. LEXIS 6755 (D.N.J. June 7, 1989)............................7

Tempo Shain Corp. v. Bertek, Inc.,
    120 F.3d 16 (2d Cir. 1997)......................................................................................10

Turner v. Schering-Plough Corp.,
    901 F.2d 335 (3d Cir. 1990)....................................................................................20

**State Cases**

Braddock v Braddock,
    60 AD3d 84 (1st Dept 2009)....................................................................................24

Cole v. Jersey City Medical Center,
    2013 N.J. LEXIS 830 (Aug. 14, 2013) .....................................................................5

Deerfield Comms. Corp. v. Chesebrough-Ponds, Inc.,
    68 N.Y.2d 954, 502 N.E.2d 1003, 510 N.Y.S.2d 88 (1986)....................................24

Dispenziere v. Kushner Companies,
    101 A.3d 1126 (App. Div. 2014) .............................................................................16

DiTrilio v. Antiles,
    662 A.2d 494 (N.J. 1995)...........................................................................................6

Epstein v. Wilentz, Goldman & Spitzer, P.A.,
    No. A1157-14T1, 2015 WL 9876918 (N.J. Super. Ct. App. Div. Jan. 22,
    2016) ........................................................................................................................16

Garfinkel v. MOGA,
    168 N.J. 124 (2001) ...........................................................................................17, 18

Hojnowski v. Vans Skate Park,
    187 N.J. 323 (2006) .................................................................................................17

K-Land Corp. No. 28 v. Landis Sewerage Auth.,
    800 A.2d 861 (2002) ..................................................................................................6

Leodori v. CIGNA,
    175 N.J. 293 (2003) .................................................................................................18

Marchak v. Claridge Commons, Inc.,
    134 N.J. 275 (1993) .................................................................................................17

<u>Martindale v. Sandvik, Inc.</u>,
    173 N.J. 76 (2002) ...............................................................................................17

<u>Prevratil v. Mohr</u>,
    678 A.2d 243 (1996) ...............................................................................................6

<u>Sabo v. Delman</u>,
    3 N.Y.2d 155, 143 N.E.2d 906, 164 N.Y.S.2d 714 (1957).....................................24

<u>WIT Holding Corp. v. Klein</u>,
    282 A.D.2d 527, 724 N.Y.S.2d 66 (2d Dep't 2001)................................................24

**Federal Statutes**

Federal Arbitration Act § 2 ...........................................................................................17

**State Statutes**

Arbitration Law 1994 Article 58, ¶ 2.............................................................................14

Chinese Civil Procedure Law 1991 Article 217 .............................................................14

Chinese Civil Procedure Law 1991 Article 260 .............................................................13

N.J.S.A. 10:5-1 et seq. ..................................................................................................18

**Rules**

Fed. R. Civ. P. 56..........................................................................................................20

Fed. R. Civ. P. 56(a) .....................................................................................................20

Fed. Rule of Evid. 902(3) ..............................................................................................20

<u>Rule</u> 12(b)(6)..................................................................................................................6

<u>Rule</u> 56(c)(1)(A) ............................................................................................................20

<u>Rule</u> 56(d) .....................................................................................................................21

**Other Authorities**

Cohen, Jerome A., *"Time to Fix China's Arbitration,"* Far Eastern Econ. Rev.,
    Vol. 168, Issue I, p. 31-37 (2006) ...........................................................................11

Lanfang Fei, *"Public Policy as a Bar to Enforcement of International Arbitral
    Awards: A Review of the Chinese Approach,"* Arbitration International
    Journal, 26(2), 303 (2010) .......................................................................................14

Rebecca Fett, *"Forum Selection for Resolution of Foreign Investment Disputes in China,"* 62-APR Disp. Resol. J. 73, 78 (2007) ....................................................................14

Report of the Committee on the Enforcement of International Arbitral Awards, E/2704 and Annex, p. 20, available at https://newyorkconvention1958.org/visionneuse.php?lvl=afficheur&explnum =2809#page/20/mode/2up/search/due+form ..........................................................12

Zimmerman, Jonathan H, *"When Dealing With Chinese Entities, Avoid the CIETAC Arbitration Process,"* The Advocate, Official Publication of the Idaho State Bar. Vol. 53, Issue 2, p. 23 – 24 (2010)..............................................................11

**PRELIMINARY STATEMENT**

Petitioner improperly seeks to enforce a foreign arbitration award that has already been waived since it is being litigated in <u>Xiamen ITG Group Corp., Ltd. v. Peace Bird Trading Corp., et al.</u> Civil Action No. 19-CV-6524 ("First Filed Case").   In addition, the foreign arbitration was not binding and was fraught with due process violations. It is no surprise that the foreign arbitration cannot be enforced since the panel portrayed themselves as members of the Chinese Communist Party ("CCP") and ITG is a large company controlled by the People's Republic of China.

It is important to keep in mind that this motion is improper since in the First Filed Case, that Court is handling a case involving the same exact goods where Crystal Vogue has articulate facts whereby ITG owes Crystal Vogue several million dollars as a result of ITG's deleterious conduct regarding the shipment of those goods.  More specifically, Petitioner solicited Crystal Vogue and the other entities to purchase large amount of goods based upon the promise that Petitioner would timely pay the duties, taxes and customs for those goods to be timely released and then shipped to Crystal Vogue's customers.    However, Petitioner failed to timely pay the duties, taxes and customs leading to a significant number of goods being seized and/or late which resulted in customer charge backs and lost customers.  At the end of the day, Crystal Vogue is no longer in business and lost millions of dollars because of ITG's actions.   It seems apparent that Petitioner does not like the fact that its improper conduct is being exposed in the First Filed Case and now it is filing this application to try and sideline justice in the First Filed Case.

In any event, this Court should not grant the Petitioners' motion but grant the motion filed by Crystal Vogue seeking to dismiss the petition or to transfer this case to the US District Court for the Eastern District of New York, where the First Filed Case is pending.

**STATEMENT OF FACTS**

Petitioner ITG sought out and approached Peace Bird Trading, Xing Lin and Crystal Vogue with respect to the sale of fabrics and textiles which would originate from China and be shipped to Mexico. ITG made numerous representations to Peace Bird Trading, Xing Lin and Crystal Vogue in order to procure their business. For instance, ITG promised to ship the goods "LDP Mexico" which required ITG to timely pay all the customs fees, duties and taxes imposed by the government of the destination ports. In fact ITG promised Peace Bird Trading, Xing Lin and Crystal Vogue that "LDP – The guest warehouse, customs clearance fee and customs duties are paid by Xiamen ITG Group Corp, Ltd." ITG was aware that its promise to timely pay customs fees, duties and taxes imposed by the government of the destination ports were an essential term of the contract between ITG and Peace Bird Trading Corp., Xing Lin (USA) International Corp. and Crystal Vogue Inc. regarding the goods at issue in this case since Peace Bird Trading Corp., Xing Lin (USA) International Corp. and Crystal Vogue Inc. did not have sufficient funds to pay the customs fees, duties and taxes imposed by the government of the destination ports for the large shipment of goods promised by ITG.

ITG was advised that Peace Bird Trading, Xing Lin and Crystal Vogue could not order a large amount of commodities unless ITG promised to pay the customs fees, duties and taxes imposed by the government of the destination ports. As a result, to persuade Peace Bird Trading, Xing Lin (USA) International and Crystal Vogue to order a large amount of goods, ITG promised to timely pay customs fees, duties and taxes imposed by the government of the destination ports. ITG was advised by Peace Bird, Xing Lin and Crystal Vogue Inc. that if the customs fees, duties and taxes imposed by the government of the destination ports were not timely paid, the goods would not be released, there would be excessive charges for holding the goods at the ports and eventually, the customs officials would seize the goods. ITG was also advised that the commodities

such as fabrics and textiles were seasonal, and therefore if the goods were not timely released by customs, the goods could not be sold to the customers of Peace Bird, Xing Lin and Crystal Vogue.

Despite ITG's awareness of the time sensitivity of the payment of the customs fees, duties and taxes imposed by the government of the destination ports, ITG failed to timely pay and/or timely transfer the funds to pay the customs fees, duties and taxes imposed by the government of the destination ports. ITG refused and/or failed to timely pay the customs fees, duties and taxes imposed by the government of the destination ports. Due to the delivery time in an industry dependent on fast-changing fashion trends, most goods delivered late, and or withheld for a season, only have salvage value once their style is passé, and retailers no longer wish to display or market them.

As a result of ITG's actions and/or inactions, the commodities at issue were not timely received by Peace Bird, Xing Lin and/or Crystal Vogue and certain commodities at issue were seized by customs officials.   In addition, many of the containers and/or shipments were never received by Peace Bird, Xing Lin and/or Crystal Vogue.  In addition, Peace Bird, Xing Lin and Crystal Vogue did not timely receive seasonal goods which their customers ordered and lost significant amounts of money and was required to accept "chargebacks" from its customers and therefore even lost more money was a result of ITG's actions and/or inactions. In addition, they lost a significant amount of good will in the industry and has been unable to engage in a profitable business since ITG's failure to abide by their agreement.

As a result of ITG's actions and/or inactions and/or delays, demurrage[1] of all delayed containers from the ports and shipping companies was approximately $1,000,000.00.  Moreover,

---

[1] Demurrage is a charge payable to the owner of a chartered ship in respect of failure to load or discharge the ship within the time agreed.

the Mexico Customs issued approximately $2,000,000.00 in penalties.  Furthermore, the Mexican customs authorities confiscated certain goods.  The value of the confiscated goods by Mexico customs was approximately $500,000.00.  In addition, the value of the goods were depreciated in an amount not less than $5,000,000.0 since, among other things, the goods were now from a past season.  Furthermore, there were additional warehouse storage charges due to the delay shipment and cancellation from the customers which resulted in approximately $1,800,000.00 in damages.  Moreover, there were charge back from customers of Peace Bird, Xing Lin and/or Crystal Vogue, due to the cancellation of the delivery of goods, was approximately $3,000,000.00.  At the end of the day, ITG's actions and/or inactions caused Peace Bird, Xing Lin and/or Crystal Vogue to close their companies.   The total amount of damages for all the companies was $50,000,000.00.

## RELEVANT PROCEDURAL HISTORY

On January 2, 2019, there was an arbitration commenced before the China International Economic Trade Arbitration Commission ("CIETAC").  The CIETAC is an arm of the Chinese Government with a history of due process violations.    Petitioner is also a company owned and/or controlled by the Chinese Government. On November 19, 2019, Petitioner filed the First Filed Case involving the goods at issue in this case. Horn Dec. Ex. 1.  In response, Crystal Vogue asserted claims against Petitioner and Petitioner then asserted claims against Crystal Vogue. Horn Dec. Ex. 2 – 4.  The parties in the First Filed Case has engaged in extensive discovery and filed large discovery motions.

While discovery motions were pending in the First Filed Case, Petitioner filed the within case as well as a new case in the Eastern District of New York under Xiamen ITG Group Corp., Ltd. v. Peace Bird Trading Corp., Case No. 21-cv-00535. Horn Dec. Ex. 8 - 10.

## POINT I

**THE ARBITRATION WAS WAIVED BY FILING THE FIRST FILED CASE**

**A.     WAIVER OF THE ARBITRATION PROVISION**

Petitioner has litigated this case for years in the First Filed Case without seeking to enforce an arbitration award or demanding that the case be stayed pending the results of an arbitration. Petitioner's actions have resulted in a waiver of the arbitration and therefore Petitioner's motion cannot be granted.

It is well settled that "[t]he right to arbitration, like any other contract right, can be waived." Cornell & Co., Inc. v. Barber & Ross Co., 360 F.2d 512, 513 (D.C.Cir.1966). "A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right." Ibid. The New Jersey Supreme Court in Cole v. Jersey City Medical Center, 2013 N.J. LEXIS 830 (Aug. 14, 2013), held that the defendant had waived its right to compel arbitration of claims brought by the plaintiff where the defendant waited 21 months after being made a party to the lawsuit and three days prior to the trial date before moving to compel arbitration. Adopting a totality of the circumstances analysis, the Supreme Court held that the defendant had waived its right to arbitrate the plaintiff's claims because it had "engaged in all the usual litigation procedures for 21 months, and only on the eve of trial, invoked its right to arbitrate." Id. at *35. Writing for a unanimous Court, Judge Cuff concluded that "[s]uch conduct undermines the fundamental principles underlying arbitration and is strongly discouraged in our state." Ibid.

Under the circumstances of this case, the Court finds that the Arbitration Clause falls within the Convention's limited exception of being declared "null and void." Specifically, Petitioner's unilateral of filing the First Filed Case and litigating issues involving these same goods and the same transaction, amounts to a waiver of any arbitration provision.  As such, the Court should find that Petitioner's actions are a waiver of the arbitration and deny Petitioner's application.

## B.       THE ENTIRE CONTROVERSY DOCTRINE

Petitioner's motion must also be denied since it offends New Jersey's entire controversy doctrine.  The entire controversy doctrine is intended to prevent piecemeal litigation by requiring the assertion of all claims arising from a single controversy in one action.  See Prevratil v. Mohr, 678 A.2d 243, 248 (1996).  Its "purposes are to encourage comprehensive and conclusive litigation determinations, to avoid fragmentation of litigation, and to promote party fairness and judicial economy and efficiency . . . ." K-Land Corp. No. 28 v. Landis Sewerage Auth., 800 A.2d 861, 868 (2002).

"Generally speaking, the entire controversy doctrine requires whenever possible all phases of a legal dispute to be adjudicated in one action.  At a minimum, all parties to a suit should assert all affirmative claims and defenses arising out of the underlying controversy." Prevratil, 678 A.2d at 246.  In other words, "a party cannot withhold part of a controversy for later litigation even when the withheld component is a separate and independently cognizable cause of action." In re Mullarkey, 536 F.3d 215, 229 (3d Cir. 2008) (citing Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 137 (3d Cir. 1999)).  In applying the doctrine, "the central consideration is whether the claims . . . arise from related facts or the same transaction or series of transactions." DiTrilio v. Antiles, 662 A.2d 494, 502 (N.J. 1995).  The entire controversy doctrine is applied under Rule 12(b)(6), but only where its application is "apparent on the face of the complaint[.]" See Brody v. Hankin, 145 F. App'x 768, 771 (3d Cir. 2005).

Here, the Entire Controversy doctrine supports denying Petitioner's motion in its entirety. All claims regarding the goods in question must be litigated in the First Filed Case.  Indeed, that Court has already spent a significant amount of time and resources on that case.  There is no reason for this Court to render a ruling that might be inconsistent with the First Filed Case.  There is also no reason for this Court to utilize its resources to rule on issues that are already before another

court.  As such, this Court should deny Petitioners application to enforce a Foreign Arbitration Ruling which is based upon goods that are already the subject of litigation in the First Filed Case.

### C.        THE FIRST-TO-FILE RULE

The first-to-file rule alone requires that Petitioner's motion be denied.  It provides that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject matter must decide it." EEOC v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988). The doctrine is a "policy of comity" that "counsel[s] trial judges to exercise their discretion by enjoining subsequent prosecution of 'similar cases . . . in different federal courts.'" Ibid. (citations omitted). Accordingly, the doctrine gives courts the power to dismiss, stay, or transfer a later-filed case. Allianz Life Ins. Co. of N. Am. v. Estate of Bleich, 2008 U.S. Dist. LEXIS 90720, at *7 (D.N.J. Nov. 6, 2008) (citing Keating Fibre Int'l, Inc. v. Weyerhaeuser Co., 416 F. Supp. 2d 1048, 1052-1053 (E.D. Pa. 2006)). For the first-to-file rule to apply, there must be a "substantial overlap" between the two actions, but the issues and parties involved need not be identical. Siemens Fin. Servs. v. Open Advantage M.R.I. II L.P., No. 07-1229, 2008 U.S. Dist. LEXIS 15623, at *10 (D.N.J. Feb. 29, 2008); Nature's Benefit, Inc. v. NFI, No. 06-4836, 2007 U.S. Dist. LEXIS 62871, at *8 (D.N.J. Aug. 27, 2007) (citing Save Power Ltd. v. Syntek Fin. Corp., 121 F.3d 947, 950 (5th Cir. 1997)); GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharm. Corp., No. 05-898, 2005 U.S. Dist. LEXIS 40007, at *26 (D.N.J. May 10, 2005) (citing Specialty Ins. Agency, Inc. v. Walter Kaye Associates, Inc., No. 89-1708, 1989 U.S. Dist. LEXIS 6755, at *5 (D.N.J. June 7, 1989)).

Here, the first-to-file rule applies because the issues in the two current actions overlap substantially, the parties in the two actions are substantially similar.  In fact, the Counterclaims contain a chart which outlines the goods where the taxes, duties and customs were not timely paid by Petitioner, causing Crystal Vogue and other defendants in that case, a significant amount in

damages.  After over a year and a half of litigating the First Filed Case, Petitioner has decided to file a new case and then seek a dispositive motion at the onset of the case.  This is procedurally inappropriate in light of the pending First Filed Case.

## POINT II

### THE FOREIGN ARBITRATION FINDING IS UNENFORCEABLE

### A.   OVERALL STANDARD

Article V of the New York Convention provides the following grounds of refusal to recognize and enforce an arbitral award: 1) the parties are under some incapacity with respect to the applicable arbitration agreement, or the agreement is otherwise invalid; 2) the party against whom the award is invoked was not given proper notice of the arbitration or appointment of an arbitrator or was otherwise unable to present its case; 3) the award exceeds the scope of the terms of the submission to arbitration; 4) the composition of the arbitral authority or the arbitral procedure was not in accordance with the parties' agreement; 5) the award has not yet become binding on the parties; 6) the subject matter of the award is not capable of settlement by arbitration under the law of the court where confirmation and enforcement are sought; or 7) the confirmation or enforcement of the award would be contrary to public policy. *See* Inter-American Convention art. 5 June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (effective for the United States on Dec. 29, 1970); New York Convention art. 5; see also Shanghai Contake Chemicals, Ltd. v. Gren Auto., Inc., No. CIV.A. 08-6209 (JAP), 2009 WL 4509302, at *2–3 (D.N.J. Dec. 1, 2009).  In addition to the grounds for refusal articulated in the Convention, the Third Circuit has held that "a district court should refuse to enforce an arbitration award under the Convention where the parties did not reach a valid agreement to arbitrate, at least in the absence of a waiver of the objection to arbitration by the party opposing enforcement." China Minmetals Materials Imp. and Exp. Co., Ltd. v. Chi Mei Corp., 334 F.3d 274, 286 (3d Cir.2003).

Here, Petitioner's motion must be denied since: 1) the arbitration provision is invalid because ITG defrauded Crystal Vogue into the transaction; 2) the arbitration was never agreed to be binding or in the place of a court adjudication; 3) the composition of the arbitral authority or the arbitral procedure was not in accordance with the parties' agreement; 4) the confirmation or enforcement of the award would be contrary to public policy; 5) Crystal Vogue was not able to present its full case to the foreign arbitrators; and 6) Petitioner waived its right to arbitration by engaging in extensive litigation if the First Filed Case.

**B.** **THE FOREIGN ARBITRATION PROCEDURE VIOLATED PUBLIC POLICY AND DID NOT AFFORD CRYSTAL VOGUE THE OPPORTUNITY TO FULLY PRESENT**

The foreign arbitration violated public policy and did not afford Crystal Vogue a full opportunity to present its defenses.  In fact, Crystal Vogue could not fairly present its defense in the arbitration forum where the Chinese Government controls the arbitration forum and also controls ITG.  As such, this Court should deny Petitioner's application in its entirety,

Article V(1)(b) of the Convention provides that a party resisting confirmation of an arbitration award can do so by demonstrating that it was "not given proper notice" of the arbitration or was "otherwise unable to present his case." "[A] party seeking to avoid confirmation of an arbitral award on the basis of Article V(1)(b) must demonstrate that the award was rendered pursuant to procedures inconsistent with the forum state's standards of due process." Sonera Holding B.V. v. Cukurova Holding A.S., 895 F. Supp. 2d 513, 521 (S.D.N.Y. 2012) (citing Iran Aircraft Indus. v. Avco Corp., 980 F.2d 141, 145 (2d Cir. 1992), rev'd on other grounds, 750 F.3d 221 (2d Cir. 2014)).

To satisfy the requirements of due process, parties to an arbitration "must be given 'notice reasonably calculated' to inform them of the proceedings and 'an opportunity to be heard.'" Jiangsu, 399 F. Supp. 2d at 168 (quoting Anhui Provincial Imp. and Exp. Corp. v. Hart Enters.

9

Int'l, Inc., No. 96-CV-0128, 1996 WL 229872, at *3 (S.D.N.Y. May 7, 1996) ); See Iran Aircraft Indus. v. Avco Corp., 980 F.2d 141, 145-46 (2nd Cir. 1992) (affirming district court's refusal to enforce arbitration award where party received conflicting instructions from tribunal regarding proper presentation of its evidence, resulting in disallowance of certain claims by tribunal). In cases similar to the case at hand, when an arbitrator deprives a party of its fundamental due process rights, the award should be vacated. See, e.g., Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997).

Under the UFMJRA, a court must deny recognition and enforcement of a foreign judgment if it is the product of a judicial system that does not have impartial tribunals or procedures compatible with due process. The UFMJRA also allows U.S. courts to deny enforcement where the cause of action on which a judgment is based is repugnant to the public policy of the enforcing state.

Here, the idea that arbitrators that are affiliated with the Chinese Communist party would permit a fair hearing when ITG, a large company affiliated with the People's Republic of China is delusional.  This is especially true since Crystal Vogue is a New Jersey company which was not provided a fair hearing in this Chinese Arbitration proceeding.   One similar example is where the U.S. Court of Appeals for the Ninth Circuit denied recognition of judgments entered in an Iranian court, finding that the record demonstrated trials in that country to be non-public, highly political, corrupt, and lacking in judicial independence.  Bank Melli Iran v. Pahlavi, 58 F.3d 1406 (9th Cir 1995).

It has been indicated in numerous publications regarding the CIETAC arbitration's fairness and effectives that an anti-foreign bias and local protectionism do exist among CIETAC arbitrators. For instance, Jerome A. Cohen, a respected legal scholar and experienced CIETAC

arbitrator, has urged for the CIETAC to address the defects that relate to the procedure according to which the arbitrators' hearing the proceedings are chosen, considered biased, and expected confidentiality. Cohen has, among others, suggested that the CEITAC should refrain from using its own personnel as arbitrators. See Cohen, Jerome A., "*Time to Fix China's Arbitration,*" Far Eastern Econ. Rev., Vol. 168, Issue I, p. 31-37 (2006).

In addition, Article V(l)(d) of the New York Convention itself suggests the importance of arbitral composition, as failure to comport with an agreement's requirements for how arbitrators are selected is one of only seven grounds for refusing to enforce an arbitral award. Here, the arbitration award itself indicates that the arbitrator was not chosen pursuant to the agreement between the parties.  Horn Dec. Ex.  10, p. 4.

Some practitioners even claim that CIETAC arbitration should be avoided at all costs. *See* Zimmerman, Jonathan H, "*When Dealing With Chinese Entities, Avoid the CIETAC Arbitration Process,*" The Advocate, Official Publication of the Idaho State Bar. Vol. 53, Issue 2, p. 23 – 24 (2010). Based on the foregoing considerations, it is reasonable to assume that there was some collusion between the Chinese state-owned Petitioner and the Arbitrators that issued the award in question.  In addition, given the fact that Crystal Vogue was not able to choose its arbitrator, it was deprived of the opportunity to present its case, it is also logical to conclude that the Arbitrators that issued the award did not act in an impartial manner and in rendering their decision were biased towards owned by a communist People's Republic of China Respondent and against the U.S. privately owned.

Under the law, [t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time in a meaningful manner." See Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Amstrong v. Manzo, 380 U.S. 545, 552 (1965)). Accordingly, if the Crystal Vogue was

indeed denied the opportunity to be heard in a meaningful time or in a meaningful manner, enforcement of the award should be refused pursuant to Article V(1)(b).

So under Geneva Convention it was established that there were the grounds for refusal of the enforcement of an award where a party "was not given notice [ ... ] of the arbitration proceeding in due form or in sufficient time to enable him to present his case." <u>See</u> Travaux Preparatoires, Draft Convention on the Recognition and Enforcement of Foreign Arbitral Awards and Comments by Governments and Organizations, Report of the Committee on the Enforcement of International Arbitral Awards, E/2704 and Annex, p. 20, available at https://newyorkconvention1958.org/visionneuse.php?lvl=afficheur&explnum=2809#page/20/mode/2up/search/due+form. The drafters of the New York Convention retained the notice requirements of Geneva Convention. However, they wished to also cover other serious breaches of due process and thus included the inability of a party to present its own case as a separate requirement. <u>See</u> Travaux preparatoires, Summary Records of the United Nations Conference on International Commercial Arbitration, Twenty-third Meeting, EICONF.26/SR.23, p. 15.

It is noteworthy that the Foreign Arbitration Award specifically articulates the fact that Respondent did not have the opportunity to pick its arbitrator despite the provisions of the arbitration clause. Ex. 10, p. 4.   In addition, the Foreign Panel did not consider any "written defense documents." <u>Id.</u> at 8.  Clearly, the Foreign Arbitration Ruling cannot be enforced.  In fact, it is important to keep in mind that courts have previously held that an arbitration finding by the CIETAC was not binding when that panel violated a litigants due process rights regarding service. <u>See</u> <u>Handan Haxing Toys v. Elko (USA), Ltd.</u>, Civ Action No. CV-05-1310, (E.D. NY 2005).

Based upon the above the Court should not grant Petitioners' application.  In addition, if the Court is going to entertain this case, it should find that the application is premature since

discovery on these highly relevant issues has not yet occurred.  For instance, there should be discovery as to the issues regarding the connection between CIETAC and ITG.  There should also be discovery regarding the procedures followed by the CIETAC and discovery regarding the due process that CIETAC deprived Crystal Vogue.  Furthermore, the Court should wait until discovery is completed in the First Filed Case since there are going to be a number of depositions regarding the goods at issue in both cases.  While the Court should still deny Petitioners motion, and if it is not willing to dismiss or transfer the case, the Court should order that the parties engage in discovery on these issues.

### C.      THE ARBITRATION PROVISION IS NOT ENFORCEABLE

Petitioner's application must be denied since the parties were not required to submit the case to foreign arbitration and foreign arbitration finding should not be considered final and binding. It is also noteworthy that the arbitration clause at issue is not enforceable since it does not clearly and unequivocally indicate that the signatories are waiving their right to adjudicate the case in a court of law in the United States.

> Arbitration: Any dispute, controversy or claim arising out of or relating to this contract, or the breach, termination or invalidity thereof, shall be settled amicably through negotiation. In case no settlement can be reached between the two parties, the case shall be submitted for arbitration to China International Economic and Trade Arbitration Commission in Beijing in accordance with its Arbitration Rules. The tribunal shall be composed of three arbitrators. Each party shall nominate one arbitrator and jointly nominate the third arbitrator who shall act as the presiding arbitrator. Where the parties have failed to nominate the third arbitrator, the third arbitrator shall be appointed by the chairman of CIETAC. The presiding arbitrator shall not be a lawyer in practice. The arbitrary award shall be accepted as final and binding upon both parties. The arbitration fee shall be borne by the losing party.
> Horn Dec. Ex. 9 (emphasis added)

Noticeably absent from this provision is language that requires the parties to submit the case to arbitration.  For instance the word "shall" used in this paragraph cannot be interpreted to be "must" which would require an arbitration.   In fact, under Chinese Civil Procedure Law Article 260, arbitration awards are note even binding since the courts to refuse to enforce a judgment or

award if it would be detrimental to the social or public interests of the community. See also Rebecca Fett, *"Forum Selection for Resolution of Foreign Investment Disputes in China,"* 62-APR Disp. Resol. J. 73, 78 (2007); Lanfang Fei, *"Public Policy as a Bar to Enforcement of International Arbitral Awards: A Review of the Chinese Approach,"* Arbitration International Journal, 26(2), 303 (2010). In fact, the first paragraph of Article 217 of the Civil Procedure Law 1991 provides "If the people's court determines that the execution of the arbitral award would contradict the social and public interest, the people's court shall order to not execute the award."

Also, Arbitration Law of China 1994 also applied the principle of 'social and public in the Civil Procedure Law 1991 by confirming the social and public interest as an requirement to the enforcement of domestic and foreign-related arbitral awards in Article 63 and Article 71. In addition, Article 58 mentioned 'public interest' as one of a grounds for the court to aside the award in Paragraph 2 as well as Article 70. Article 58, paragraph 2 of the Arbitration Law 1994 provides "If the people's court determines that the arbitration award violates the public interest, it shall rule to set aside the award." As such, Article 58 of the Arbitration Law 1994 authorizes Chinese court to set aside an arbitral if the court determines that the arbitration award violates public interest.

Article 63 refers second paragraph of Article 217 of the Civil Procedure Law 1991 to disallow the award on 'social and public interest' contradiction. In a matter of foreign-related award, Article 70 and 71 allow Chinese court to set aside disallow the award if there are any circumstances listed in the first paragraph of Article 260 the Civil Procedure Law 1991. Article 63 provides "If the party against whom the enforcement is sought presents evidence which proves that the arbitration award involves one of the circumstances set forth in the second paragraph of Article 217 of the Civil Procedure Law, the people's court shall, after examination and verification by a collegial panel formed by the people's court, rule to disallow the award."

Based upon Chinese Law, the arbitration finding of the panel is not actually binding since there are vague and broad avenues where a party can render the arbitration award unenforceable. Therefore based upon the forum of the arbitration, this Court should not find that any ruling from that panel is actually enforceable.

In addition, the clause does not specifically indicate that the parties are waiving their right to file a lawsuit and have a jury determine the outcome of the case. Indeed, the Third Circuit has held that arbitration clauses must be clear and unequivocal in order to force parties to arbitrate their disputes. See Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 106 (3d Cir. 2000) (quoting Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980) ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect.")).

The Third Circuit also has held that the absence of a valid agreement to arbitrate is a defense permitted under Article V. In China Minmetals, 334 F.3d 274, parties from the United States and China arbitrated a commercial dispute before CIETAC. One party, Chi Mei, appeared at arbitration but objected to CIETAC's jurisdiction, arguing that the contract containing the arbitration clause had been forged. The arbitrator issued an award in favor of China Minmetals, and the district court in New Jersey granted China Minmetals' motion to enforce the award. The Third Circuit vacated and remanded. Although the Court of Appeals acknowledged that "the absence of a written agreement is not articulated specifically as a ground for refusal to enforce an award under Article V," id. at 283, it then recognized the principle that an agreement to arbitrate is pivotal. The Third Circuit held that "[r] ead as a whole ... the Convention contemplates that a court should enforce only valid agreements to arbitrate and only awards based on those agreements." Id. at 286.

15

In China Minmetals, as in the case at bar, the arbitration provision at issue incorporated the rules of CIETAC, which rules allow the arbitrators to determine their own jurisdiction. The Third Circuit noted, however, that "incorporation of this rule into the contract is relevant only if the parties actually agreed to its incorporation. After all, a contract cannot give an arbitral body any power, much less the power to determine its own jurisdiction, if the parties never entered into it." Id. at 288.

The issues improperly adjudicated by the CIETAC should continue to be litigated in the EDNY rather than be short circuited by an arbitration award that is unenforceable. Granite Rock Co. v. Int'l Brotherhood of Teamsters, No. 08–1214, slip op. at 6 (U.S. June 24, 2010).  Arbitration is a matter of contract, that is, where a party has not expressly agreed to arbitrate, a court will not generally compel it do so. Cf. E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S, 269 F.3d 187, 194 (3d Cir.2001) ("Similarly, there is no dispute that a non-signatory cannot be bound to arbitrate unless it is bound 'under traditional principles of contract and agency law' to be akin to a signatory of the underlying agreement." (quoting Bel–Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir.1999))).

The Third Circuit favors judicial determination on questions of arbitrability. See Guidotti, 716 F.3d at 775; Quillion v. Tenet HealthSystem Philadelphia, Inc., 673 F.3d 221, 228 (3d Cir. 2012) ("[Q]uestions of arbitrability, including challenges to an arbitration agreement's validity, are presumed to be questions for judicial determination."). In addition, Petitioners' arguments are consistent with the approach of the New Jersey Appellate Division after the issuance of Atalese. See Dispenziere v. Kushner Companies, 101 A.3d 1126, 1132 (App. Div. 2014) (holding lack of explicit waiver of right to litigate prevented mutual assent of the parties); Epstein v. Wilentz, Goldman & Spitzer, P.A., No. A1157-14T1, 2015 WL 9876918, at *3 (N.J. Super. Ct. App. Div.

16

Jan. 22, 2016) ("The parties must have full knowledge of the legal rights they intend to surrender."); see also Min Fu v. Hunan of Morris Food Inc., 2103 WL 5970167, at *5 (App. Div. Nov. 6, 2013)("To establish lack of assent to a contract, courts look to evidence of fraud or misrepresentation by the other party[.]").

Section 2 of the Federal Arbitration Act ("FAA") "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses.'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 338 (2011) (emphasis added) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)); see Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68, (2010) (quoting Casarotto, 517 U.S. at 687) (finding arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability'"). The FAA requires courts to "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." Concepcion, 131 S.Ct. at 1745–46 (citations omitted). Accordingly, the FAA "permits states to regulate ... arbitration agreements under general contract principles," and a court may invalidate an arbitration clause " 'upon such grounds as exist at law or in equity for the revocation of any contract.'" Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002) (quoting 9 U.S.C.A. § 2); see First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts."); Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006)("[S]tate contract-law principles generally govern a determination whether a valid agreement to arbitrate exists." (citing First Options, 514 U.S. at 944)).

New Jersey is committed to assuring that a party does not unwittingly lose the "time-honored right to sue." Garfinkel v. MOGA, 168 N.J. 124, 132 (2001) (quoting Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993)), holding that Petitioner, under an agreement that "any

controversy or claim arising out of, or relating to, this Agreement shall be settled by arbitration," did not waive his remedies under the Law Against Discrimination, N.J.S.A. 10:5-1 et seq. Garfinkel, 168 N.J. at 134.  Accordingly, a "waiver-of-rights provision must reflect that a litigant has agreed clearly and unambiguously to arbitrate the disputed claim."  Leodori v. CIGNA, 175 N.J. 293 (2003).  Here, the language in the arbitration provisions at issue, simply do not contain the language necessary for an enforceable arbitration clause.  For instance, the clause does not properly explain that the signatory is waiving its right to proceed in a trial by jury in the United States.  Without such specific language, the arbitration provision is simply unenforceable and any ruling by the arbitration panel cannot be binding.

It is also noteworthy, whether Crystal Vogue was fraudulently induced into signing the documents with the arbitration provision is already being litigated in the First File Case.  Therefore, that issue must be decided by that Court.  Indeed, if the Court finds that the documents were signed as a result of fraud, the arbitration provision cannot be enforced.

### D. THE CONDITION PRECEDENT FOR ARBITRATION WAS NOT FULFILLED

Petitioner's application should also be denied since it failed to follow the condition required for arbitration to begin.  The arbitration provision specifically requires the Petitioner to try and resolve the case in good faith before the arbitration commences.  The relevant provision "[a]ny dispute, controversy or claim arising out of or relating to this contract, or the breach, termination or invalidity thereof, shall be settled amicably through negotiation. In case no settlement can be reached between the two parties, the case shall be submitted for arbitration…" Horn Cert. Ex. 9 (emphasis added)

Petitioner simply failed to fulfill this obligation. Indeed, Petitioner failed to try to resolve the case in good faith before the arbitration.  The obligation to negotiate in good faith generally

prevents one party from "renouncing the deal, abandoning negotiations, or insisting on conditions that do not conform to the preliminary agreement." See Apothekernes Laboratorium for Specialpreaeparater v. I.M.C. Chern. Grp., Inc., 873 F.2d 155, 158 (7th Cir. 1988) (enforcing obligation to negotiate in good faith imposed by letter of intent). Here, Petitioner never even engaged in any negotiation before instituting arbitration.  As such, the Court should deny Petitioner's application and if the Court does not dismiss or transfer the case, it should have discovery on the fact that this condition was not satisfied.

### E.     THE     DOCUMENTS     SUBMITTED     BY     PETITIONER     ARE PROCEDURALLY DEFECTIVE

The documents submitted by Petitioner are not procedurally sufficient to procure the relief sought.  A party seeking recognition and enforcement of an award must supply the court with:  1) a duly authenticated original award or a duly certified copy; 2) the original agreement to arbitrate or a certified copy; and 3) a duly certified translation of the award (if the award or agreement is in a language different from the official language of the country where the award is to be relied on). Article IV, UN Convention on the Recognition and Enforcement of Foreign Arbitral Awards 1958 (New York Convention); Geotech Lizenz AG v Evergreen Systems, Inc., 697 F. Supp. 1248, 1252 (E.D.N.Y. 1988).

An award must be duly authenticated to be recognized in the US Article IV, New York Convention.  The US Federal Rules of Evidence (Fed. Rule of Evid.) provide the requirements for authentication of foreign public documents. The award must be signed or attested by a person who is authorized under a foreign country's law.  The award must be accompanied by a final certification that certifies the genuineness of the signature and official position of the signer or attester (or of any foreign official whose certificate of genuineness relates to the signature or attestation or is in a chain of certificates of genuineness relating to the signature or attestation).

The certification can be made by a secretary of a US embassy or legation; by a consul general, vice consul, or consular agent of the US; or by a diplomatic or consular official of the foreign country assigned or accredited to the US. If all parties have been given a reasonable opportunity to investigate the document's authenticity and accuracy, the court may, for good cause, either order that it be treated as presumptively authentic without final certification, or allow it to be evidenced by an attested summary with or without final certification *(Fed. Rule of Evid. 902(3)).*

Based upon the above, Petitioner's motion must be denied.

## POINT III

## PETITIONER'S MOTION IS PROCEDURALLY IMPROPER

Petitioner has filed a dispositive motion without conforming to the requirements to make such a motion and without even waiting for an Answer or discovery to commence.  Fed. R. Civ. Pro. 56 provides for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

Firstly, Petitioner's motion is defective since it fails to conform to Rule 56(c)(1)(A) which provides that any party asserting that a fact is or is not in dispute must support that assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials."

Secondly, discovery has not taking place in this case.  In fact, there is currently relevant discovery being pursued in the First Filed Case.  Rule 56(d) provides that this Court may deny the dispositive motion since discovery has not yet occurred.  Specifically, the following are areas needed for discovery: 1) discovery regarding the fact that the parties did not seek to bind themselves to arbitration and waive their right to proceed in court; 2) there is a deep connection between the arbitration panel and ITG rendering the ruling unenforceable; 3) the extent to which Panel failed to  follow the arbitration provision; 4) the extent to which ITG failed to fulfill the condition president for arbitration; 5) the basis for the Panel's refusal to consider evidence from Crystal Vogue and the evidence it actually considered;  6) the specific actions of the Petitioner outside of court that caused the waiver by litigating the First Filed Case and 7) testimony and documents regarding ITG's fraudulent promises to timely pay the taxes, duties and customs rendering the documents at issue void.  As such, even if the arbitration provision is not waived, there would need to be discovery in this case in order for the Court to render a dispositive ruling.

Thirdly, there are currently a number of issues of fact that go to the heart of the enforceability of the arbitration provision and the underlying case.  In fact, Brian Wu has articulated facts which currently are not in dispute regarding the failure of Petitioner to abide by its agreement to pay the duties, taxes and customs for the goods in direct violation of their obligations in the agreements.  Furthermore, Brian Wu has articulated multiple factual reasons for this Court to find that the foreign arbitration's findings cannot be enforced since they violated Crystal Vogue's due process rights.  As such, a dispositive motion is simply meritless.

## POINT IV

## ITG IS LIABLE TO CRYSTAL VOGUE

ITG'S liability which is currently being litigated in the First Filed Case cannot be ignored. ITG cannot lure Crystal Vogue into transactions by promising to timely pay the customs duties and taxes which ITG knows Crystal Vogue cannot afford, causing the company to close.

ITG has alleged in the pleading filed in the First Filed Case that the United Nations Convention for the International Sale of Goods ("CISG") is the law that should be enforced regarding the goods at issue in this case. The CISG's "interpretation [must] be informed by its 'international character and ... the need to promote uniformity in its application and <u>the observance of good faith in international trade</u>.'" <u>Delchi Carrier SpA v Rotorex Corp</u>, 71 F.3d 1024, 1028 (2d Cir. 1995)(quoting CISG art. 7(1)); (emphasis added). As such, the Court in the First Filed Case will likely determine that ITG's trickery in this transaction does not promote good faith in international trade.

Furthermore, the Court will be required to place extreme emphasis on testimony. For instance, Article 11 of the CISG provides that "[a] contract of sale need not be concluded in or evidenced by writing and is not subject to any other requirement as to form. It may be proved by any means, including witnesses." CISG art. 11; <u>Forestal Guarani S.A.</u>, 613 F 3d at 398 (noting that a contract typically does not need to be in writing in order to be enforceable under the CSIG. In addition, CISG permits the oral rejection of goods. <u>See</u> CISG art. 39; <u>see also</u> CISG art. 8(1) ("[f]or the purposes of [the CISG] statements made by and other conduct of a party are to be interpreted according to his intent where the other party knew or could not have been unaware what that intent was"); <u>Shaoxing Aceco Blanket Co. v. Aceco, Inc.</u>, No. CV134937LDWGRB, 2015 WL 12659923 (E.D.N.Y. 2015), <u>aff'd,</u> 670 F. App'x 8 (2d Cir. 2016) (considering defendant's contention that it orally rejected the seller's non-conforming goods). Therefore, the

Court in the First Filed Case will need to evaluate the written documents and oral testimony to determine the contract between ITG and Crystal Vogue and whether the goods were rejected.

Moreover, the fact that ITG promised to timely pay to taxes duties and customs is enforceable. CISG art. 33(a); CISG art. 35(1); see also Saint Tropez Inc. v. Ningbo Maywood Indus. & Trade Co., No. 13 CIV. 5230 NRB, 2014 WL 3512807 (S.D.N.Y. 2014). Article 47 provides that, although a buyer typically may not breach the contract due to a seller's late delivery of goods, the buyer is always entitled to recover damages attributable to the seller's delay.  See CISG art. 47.   Indeed, the failure to timely deliver these goods is a material breach. See New World Trading Co. v. 2 Feet Prods., Inc., No. 11 CIV. 6219 SAS, 2014 WL 2039138 (S.D.N.Y. 2014), aff'd in part, remanded in part sub nom. New World Trading v. 2 Feet Prods., 652 F. App'x 65 (2d Cir. 2016).  In fact, the Court in the First Filed Case may find that ITG owes Cyrstal Vogue no money related to these goods but that Crystal Vogue must be paid by ITG since ITG materially breached its agreement. See Delchi Carrier SpA, 71 F.3d at 1028 (noting that a buyer is excused from performing its obligations under a contract governed by the CISG if the seller's breach effectively deprived the buyer of what it reasonably expected to receive under the agreement).

There are also still claims asserted by Crystal Vogue based upon promissory estoppel and Fraud in the Inducement.   It is well-settled, however, that the CISG does not apply to state tort law claims and claims for promissory estoppel. See Geneva Pharmaceuticals Technology Corp. v. Barr Laboratories, Inc., 201 F. Supp. 2d 236, 2002–1 Trade Cas. (CCH) ¶ 73680 (S.D. N.Y. 2002), aff'd in part, rev'd in part and remanded on other grounds, 386 F.3d 485 (2d Cir. 2004).

Under New York Law[2], it is clear that the documents that were signed, including the arbitration provision, are not enforceable since they were signed based upon collateral

---

[2] New York common law will likely apply since the First Filed Case is filed in New York.

misrepresentations made by ITG prior to their execution.  See <u>WIT Holding Corp. v. Klein</u>, 282 A.D.2d 527, 528, 724 N.Y.S.2d 66 (2d Dep't 2001) ("[A] misrepresentation of material fact, which is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud.").   Furthermore, the promise to timely pay the taxes, duties and customs is a promise of a future action which is collateral to the contract and therefore support the fraud claim.   See <u>Deerfield Comms. Corp. v. Chesebrough-Ponds, Inc.</u>, 68 N.Y.2d 954, 956, 502 N.E.2d 1003, 1004, 510 N.Y.S.2d 88, 89 (1986) (holding that "a promise [not contained in the written agreement] made with a preconceived and undisclosed intention of not performing it . constitutes a misrepresentation" for purposes of a fraud in the inducement cause of action (quoting <u>Sabo v. Delman</u>, 3 N.Y.2d 155, 160, 143 N.E.2d 906, 908, 164 N.Y.S.2d 714, 716 (1957)) (internal quotation marks omitted)).   It is also important to note that fraudulent inducement is not appropriately disposed on this type of motion since elements such as the reasonableness of reliance of the misrepresentations is an "intensely fact-specific [inquiry] and [is] generally considered inappropriate for determination on a motion to dismiss" and as a result a court should generally refrain from granting a motion to dismiss on that ground. <u>Doehla v Wathne Ltd., Inc.</u>, No. 98 Civ. 6087, 1999 WL 566311, at *10-12 (S.D. NY Aug. 2, 1999). In addition, there is a promissory estoppel claim since ITG made clear and unambiguous promises regarding the payment of taxes, duties and customs and those promises were reasonably relief upon by Crystal Vogue.  <u>Braddock v Braddock</u>, 60 AD3d 84, 95 (1st Dept 2009).

As such, the Court in the First Filed Case should render a ruling that would be completely inapposite to the arbitration award.   As such, it would be inappropriate to enforce the Foreign Arbitration Award in this situation.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court deny Petitioner's motion in its entirety.

<div style="margin-left:50%">

Respectfully submitted,

**ARCHER & GREINER, P.C.**
Attorneys for Respondents, *Crystal Vogue*

</div>

Dated:  March 31, 2021

By:_____
          Michael S. Horn, Esq

220644609v1